Garelick *v.* Board of Appeals of Franklin.

----

Max Garelick & another[1] *vs.* Board of Appeals of Franklin & another.[2]

Norfolk.   November 5, 1965. — February 14, 1966.

Present: Spalding, Whittemore, Kirk, Spiegel, & Reardon, JJ.

*Zoning,* "Living space requirements"; Board of appeals: authority of board, appeal to board, decision. *Equity Pleading and Practice,* Master: reference; Zoning appeal; Decree.

Except in unusual situations, in a suit in equity by way of appeal to the Superior Court under G. L. c. 40A, § 21, from a decision of a zoning board of appeals, the statutory purposes will be best accomplished and the procedure will be most appropriate if a judge hears the suit without referring it to a master.   [290]

Under a zoning by-law of a town defining "Dwelling Unit" as "one or more rooms providing complete living facilities for one family" and requiring that "the floor area of living space per dwelling unit" in apartment buildings should be not less than 468 square feet for a 3 room unit and greater amounts of square feet for 4 room units, 5 room units, and 6 room units, respectively, but silent as to the minimum living space requirements for units of one or two rooms, each of the one or two room units must have not less than 468 square feet.   [292]

Upon an appeal by the owners of a building to the zoning board of appeals of a town under G. L. c. 40A, § 13, from the building inspector's denial of their application for a permit to construct five apartments in the building because the proposed construction would not comply with the zoning by-law, the board's insistence that the owners submit a substitute plan before it would consider the appeal and its grant of variances so that the building would have a "total of four allowable apartments" were not responsive to the matter of five apartments before the

----

[1] Pauline Garelick.
[2] Building Inspector of Franklin.

board and were in excess of its authority; and upon appeal by the owners to the Superior Court under § 21 the judge rightly annulled the board's decision but erroneously ordered issuance of the building permit applied for by the plaintiffs.   [292–293]

BILL IN EQUITY filed in the Superior Court on May 25, 1964.

The suit was heard by *Cahill,* J., on a master's report.

The case was submitted on briefs.

*Neil J. Roche,* Town Counsel, for the defendants.

*Howard C. Abbott* for the plaintiffs.

KIRK, J.   This is an appeal by the defendants from a final decree in the Superior Court annulling the decision of the board of appeals (the board) and ordering the issuance of a building permit to the plaintiffs.   The case was referred to a master.

Although we recognize the inherent power of a judge of the Superior Court to refer a suit in equity to a master, *Parker* v. *Nickerson,* 137 Mass. 487, 491, nevertheless, we think that, except in unusual situations, the purposes sought to be achieved by G. L. c. 40A, § 21, will best be accomplished and the procedure be more consonant with the legislative intent if the evidence is heard and the facts determined by a judge on an appeal under that statute.

The record discloses a complicated and confusing succession of overlapping, inconsistent and unsuccessful applications by the plaintiffs, starting in April, 1963, for permits to construct apartments and for variances in the living space requirements prescribed by the zoning by-law of the town for multi-family dwellings and apartment houses. We shall refer to these applications only in so far as they will cast light on the situation as it existed when the plaintiffs appealed to the board on the matter which is the subject of the present litigation.

The facts now to be stated are gathered from the findings made by the master and from an examination of the documents incorporated in the record.   The plaintiffs own a two story building on a two acre lot in a district zoned for commercial use.   The first floor of the building is occupied

by commercial establishments.   The second floor is a large hall which had been used as a District Court room and thereafter as a meeting place for army reserves.   The plaintiffs desire to convert the hall into apartments.   All of the plaintiffs' difficulties have arisen from a dispute as to the number of apartments they could construct on the second floor under the provisions of the zoning by-law relating to living space requirements.

Sometime before June 19, 1963, the plaintiffs applied to the board for permission to "make apartments" on the second floor of the building and submitted plans for five apartments.   The decision of the board, made on August 1, 1963, stated that "this petition for a variance should be allowed with the express understanding that the space will be used only for five conforming apartments . . .."   We consider this decision of the board as authorizing a change of use from commercial to residential use.   During August, 1963, the plaintiffs, without having obtained a building permit from the building inspector, began the construction of five apartments.   In December, 1963, the inspector ordered the work halted, and later, upon noncompliance by the plaintiffs, obtained a restraining order to compel obedience.

On January 7, 1964, the plaintiffs filed with the building inspector a new application, with plans, for a permit to construct five apartments.   The inspector refused to issue the permit stating in writing, among other reasons, that the proposed construction did not comply with the zoning by-law of the town.   The plaintiffs appealed to the board. G. L. c. 40A, § 13, as amended through St. 1963, c. 207, § 1. Before hearing the appeal the board requested the plaintiffs to "bring a plan showing four 3-room apartments conforming as nearly as possible to the zoning and building codes . . .."   The board at the same time informed the plaintiffs that "this will be the only plan which the Board will consider."   It does not appear from the record that the plaintiffs ever submitted the requested substitute plan, although it does appear that, prior to the hearing on the appeal, the plaintiffs' counsel was in conference with the board.

The decision of the board on May 4, 1964, granted permission to the plaintiffs to construct "four allowable apartments" on the premises. It "granted a variance for apartments in a Commercial Area." It granted a variance in the floor space requirements for one of the five proposed apartments, and combined two of the five proposed apartments into one conforming apartment, thus making a "total of four allowable apartments."

The plaintiffs appealed to the Superior Court under G. L. c. 40A, § 21. The judge entered a decree that the decision exceeded the board's authority and ordered it annulled. He ordered that the permit sought from the building inspector on January 7, 1964, be granted.

On the merits, the case turns on the meaning to be given to the applicable provisions of the zoning by-law of the town. Section I–C 4 of the zoning by-law defines "Dwelling Unit" as *"one or more rooms* providing complete living facilities for one family . . ."* (emphasis supplied). Section V–E of the zoning by-law provides: "No dwelling shall be erected, reconstructed, remodeled or altered, so that the floor area of living space per dwelling unit shall be less than the following: . . . For multi unit apartment building 3 room unit — 468 sq. ft. living space; 4 room unit — 610 sq. ft. living space; 5 room unit — 750 sq. ft. living space; 6 room unit — 890 sq. ft. living space."

Section V–E does not in terms specify minimum floor area requirements for one room and two room apartments. Yet it is clear from the definition of "dwelling unit" that one and two room apartments are permissible. We think that the reasonable construction of § V–E is that no dwelling unit may have less than 468 square feet and that the 468 square feet could not be used for a dwelling unit of more than three rooms. The result of this construction of the by-law is that each of the plaintiffs' proposed apartments must have, in the absence of a variance, at least 468 square feet even though the dwelling unit has less than three rooms.

In the light of the foregoing, we consider the decree. The judge was right in annulling the decision of the board

because the board did not decide the matter which was before it, namely, the denial by the building inspector of the permit for five apartments. The decision of the board was not "responsive" to the plaintiffs' appeal. *MacGibbon* v. *Board of Appeals of Duxbury,* 347 Mass. 690, 692. Furthermore, however helpful the board may have intended to be, its insistence that the plaintiffs submit a substitute plan for four apartments of three rooms each, before it would consider the appeal, was in excess of the board's authority. As noted above, the by-law permits a dwelling unit of less than three rooms provided the unit has the requisite facilities and has not less than 468 square feet of living space. The board could not, as it attempted to do, preclude a one or two room apartment under the provisions of § V–E. On the dual grounds, therefore, of the board's unresponsiveness to the appeal and the imposition of an unwarranted condition for hearing the appeal, the decree annulling the board's decision was right. On the other hand, the decree should not have ordered that the permit for five apartments, applied for on January 7, 1964, should issue. The issuance of the permit in the absence of a variance respecting living space requirements would be plainly in violation of the provisions of the by-law for such requirements.

The decree is to be modified by striking out the order "that the building permit applied for on January 7, 1964 issue." Thus modified it is affirmed.

*So ordered.*