DOROTHY WARREN *vs.* ZONING BOARD OF APPEALS
OF AMHERST & another.[1]

Hampshire.  October 9, 1980. — February 18, 1981.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Practice, Civil*, Appeal.  *Zoning*, Variance, Frontage, Exemption.

An applicant for a variance to allow the construction of a single family
dwelling on a lot with less than the minimum frontage required by a
zoning by-law could not prevail in his claim on appeal that his lot was
exempt from the frontage requirement because of the provisions of
G. L. c. 40A, § 6, as inserted by St. 1975, c. 808, § 3, and c. 40A,
§ 5A, as appearing in St. 1961, c. 435, § 1, where the record was in-
sufficient to permit this court to determine whether the lot complied
with the requirements of the zoning by-law in effect before adoption
of the current one and where the applicant failed either to raise the
issue before the town's board of appeals or to apply for a permit as of
right.  [6-9]

Findings by a town's board of appeals and by a Superior Court judge
sustaining the action of the board in granting a variance were insuffi-
cient with respect to conditions specially affecting the land but not af-
fecting the zoning district generally to satisfy the requirements of
G. L. c. 40A, § 10.  [9-13]

CIVIL ACTION commenced in the Superior Court on
March 4, 1977.

---

[1] The other defendant is John E. Deady, who applied for and received
the variance which is the subject of this litigation.

The case was heard by *Cross*, J., on a master's report.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John H. Madden, Jr.,* for John E. Deady.

*Roy H. Anderson* for the plaintiff.

QUIRICO, J. The plaintiff Dorothy Warren, claiming to be aggrieved by a decision of the zoning board of appeals of the town of Amherst (board) in granting a variance to John E. Deady for the use of land owned by him and adjoining the property of the plaintiff, appealed from that decision to the Superior Court. G. L. c. 40A, § 17. The case was referred to a master for hearing. He filed his report four months after the date of the reference. Three months later, after various objections and motions relating to the report had been disposed of, a judge of the Superior Court entered a judgment sustaining the action of the board in granting the variance.[2] The plaintiff appealed therefrom to the Appeals Court, which reversed the judgment and ordered the entry of judgment that the decision of the board was in excess of its authority and it was therefore annulled. Thereafter we granted Deady's application for further appellate review. G. L. c. 211A, § 11. We conclude, as did the Appeals Court, that the judgment entered in the Superior Court was erroneous, and that it should be reversed.

The lot of land for which the variance was granted is owned by Deady and his wife.[3] The lot is located on the

---

[2] In *Garelick* v. *Board of Appeals of Franklin*, 350 Mass. 289, 290 (1966), we said: "Although we recognize the inherent power of a judge of the Superior Court to refer a suit in equity to a master . . . nevertheless, we think that, except in unusual situations, the purposes sought to be achieved by G. L. c. 40A, § 21 [now § 17], will best be accomplished and the procedure be more consonant with the legislative intent if the evidence is heard and the facts determined by a judge on an appeal under that statute." This same view was expressed more recently in *Salah* v. *Board of Appeals of Canton*, 2 Mass. App. Ct. 488, 495 n.10 (1974), and in *Roberts-Haverhill Assocs.* v. *City Council of Haverhill*, 2 Mass. App. Ct. 715, 716 n.3 (1974). We understand that there were unusual circumstances which impelled the judge in this case to make the reference to the master, after the judge had considered the cautionary note expressed in *Garelick*.

[3] No issue is raised regarding the failure to name Mrs. Deady as a party to the application for the variance, or to join her as a named defendant in the present action.

westerly side of East Pleasant Street in Amherst and is
shown as lot numbered 33 on various zoning plans of the
town. It has a frontage of ninety-eight feet on the westerly
side of East Pleasant Street, and a depth of one hundred
fifty-one feet. Its westerly or rear boundary line is ninety-
six feet long. Its total area is 14,647 square feet. The abut-
ting lot to the west is identified as lot numbered 32 and a
part of its southerly line fronts on a private way known as
Mount Pleasant Road.

A history of the ownership and use of the two lots, to the
extent that it appears in the record before us, may be help-
ful. A Mr. and Mrs. Ritchie purchased lot 32 in 1940 and
built a single house thereon which they occupied for many
years. In 1959, they purchased the vacant lot 33. Mrs. Rit-
chie became the sole owner of the two lots on the death of
her husband. In 1970, Mrs. Ritchie sold lot 32 with the
house thereon, but retained lot 33. In 1972, she conveyed
lot 33, which was still vacant, to Mr. and Mrs. Deady, who
are her son-in-law and daughter.

In 1976, in anticipation of offering lot 33 for sale as a
building lot for a single family dwelling, Deady applied for
a variance from the board of appeals to allow the construc-
tion of such a dwelling on the lot. He took this action be-
cause he learned that the town's zoning by-law required a
minimum frontage of one hundred feet for a buildable lot in
the single family residential district in which lot 33 is lo-
cated, and he knew that the frontage of his lot was only
ninety-eight feet. The by-law also required that a buildable
lot in such a district have a minimum area of twelve thou-
sand square feet, and lot 33 met that requirement. After
giving the required notice of the application and holding a
public hearing thereon, the board granted the variance, and
on February 14, 1977, it duly filed its decision thereon in the
office of the town clerk. The variance was granted on two
conditions, one of which was "[t]hat lot dimensions as cur-
rently registered must not be altered."

The board prefaced its decision by the statement, quoted
in the margin, of what it believed to be the law governing

the granting of variances,[4] and then stated the following reasons for granting the variance in this case: "The Board recognizes that the proposed use for a lot for a single family residence is clearly the only appropriate use for the land and that to deny the variance would in effect render the land without value. To deny permission to sell this land for residential use, when all other requirements can be met, would constitute hardship in this case.

"The fact that lot #33 was separated from the house lot #32, preceding adoption of this by-law with its current frontage requirements, establishes conditions peculiar to this parcel, thus satisfying the first condition of the variance. Since the proposed single family residential use is allowed by right, within dimensional requirements, in the general residence zone, and the lot is surrounded on all sides by single

[4] The statement by the board on this point was as follows: "A variance can be granted if the petition satisfies the following conditions of Chapter 40 of the General Laws: a. that there are special conditions affecting the parcel, b. that substantial hardship, financial or otherwise, would exist if literal enforcement were carried out, c. that the relief asked would not be detrimental to the public good, d. that it would not nullify the intent of the Zoning By-Law."

This statement appears to have been based on the provisions of G. L. c. 40A, § 15, as amended through St. 1958, c. 381, which authorized a zoning board of appeals to grant "a variance from the terms of the applicable zoning ordinance or by-law where, owing to conditions especially affecting such parcel or such building but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise to the appellant, and where desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law, but not otherwise."

It should be noted that G. L. c. 40A was materially revised and rearranged by St. 1975, c. 808, § 3, and in that process, the provision corresponding to the language quoted above from the former § 15 now appears in § 10. In the new § 10, the words "where such permit granting authority specifically finds that owing to circumstances relating to the soil conditions, shape, or topography of such land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located" are substituted for the following words, quoted above in this footnote, from the former § 15: "where, owing to conditions especially affecting such parcel or such building but not affecting generally the zoning district in which it is located."

family homes, the intent of the By-Law is upheld and the public good is maintained by granting this variance."

There then followed the plaintiff's appeal from that decision to the Superior Court, the court's reference of the case to a master, whose findings of fact were in favor of the board and Deady, the Superior Court's judgment sustaining the board's decision, and the plaintiff's appeal therefrom to the Appeals Court, all as described at the beginning of this opinion.

The Appeals Court summarily reversed the judgment of the Superior Court by an order which, in its entirety, read as follows: "Upon consideration of the appendix and briefs under the provisions of Rule 1:28 of this court,[5] and upon the authority of *Raia* v. *Board of Appeals of North Reading*, 4 Mass. App. Ct. 318, 321-322 (1976), it is ordered that the following entry be made on the docket of the Superior Court Department in the above matter: *The judgment is reversed and a new judgment is to be entered that the decision of the board of appeals was in excess of its authority and is annulled.*" We then granted Deady's application for further appellate review.

Before proceeding to a consideration of the several issues argued by the parties before this court it may be helpful to determine what issues are before us. The administrative proceedings in this case started with Deady's filing of an application for a variance. The application was processed, heard and decided by the board as one involving a variance. The judicial proceedings before the Superior Court involved

---

[5] Rule 1:28 of the Rules of the Appeals Court, as amended, 6 Mass. App. Ct. 982 (1978), provides in part as follows: "At any time following the filing of the appendix (or the filing of the original record) and the briefs of the parties on any appeal in accordance with the applicable provisions of Rules 14(b), 18 and 19 of the Massachusetts Rules of Appellate Procedure, a panel of the justices of this court, acting on its own motion and either with or without entertaining oral argument, may determine that no substantial question of law is presented by the appeal or that some clear error of law has been committed which has injuriously affected the substantial rights of an appellant and may, by its written order, affirm, modify or reverse the action of the court below."

no issue other than the validity of the board's action in granting Deady a variance. An examination of the briefs submitted by each party to the Appeals Court demonstrates that there, also, the sole issue presented was the validity of the variance.[6] After the Appeals Court summarily decided the variance issue against him, Deady, in his application for further appellate review, stated only that he sought "review of the question whether the authority of the *Raia* decision can in equity and in justice be applied in the facts of this case." After we allowed his application, we requested supplemental briefs on the issue whether any provision of G. L. c. 40A, § 6, exempts Deady's lot 33 from the minimum frontage requirement of 100 feet fixed by the by-law. Both parties have complied with our request.[7]

We turn now to a consideration of the two issues presented by the briefs of the parties.

1. *Exemption Under G. L. c. 40A, § 6.* Deady contends in his supplemental brief that his lot #33 is exempt from

---

[6] The plaintiff's brief as filed in the Appeals Court states the issues to be the following:

"Were the Zoning Board of Appeals and the Superior Court correct in determining the special conditions peculiar to John Deady's parcel of land warranted the granting of a variance?

"Were the Zoning Board of Appeals and the Superior Court correct in determining that substantial hardship, financial or otherwise, would result from failure to grant the variance?

"Was the evidence sufficient to support the finding by the Zoning Board of Appeals and the Superior Court that the parcel of land owned by the defendant-appellee, John Deady, is zoned R-G and not R-N?

"Was the granting of the variance to the defendant-appellee, John Deady, beyond the scope of the authority of the Town of Amherst Zoning Board of Appeals?"

The defendant Deady states in his brief filed in the Appeals Court that he "adopts the statement of issues and the statement of the case contained in the plaintiff's brief."

[7] Deady's supplemental brief presented the issue in terms of "[w]hether the provisions of General Laws, ch. 40A, § 6, apply to the present case so as to render the increase [in] frontage requirement inapplicable to Lot 33." The plaintiff countered with a supplemental brief which stated the issue as follows: "[w]hat is the effect of [G. L. c. 40A, § 6] on the decision of the Appeals Court and on the rights of the Defendant, Deady, with respect to lot #33." We conclude that the supplemental briefs of both parties deal with the same issue.

the zoning by-law's requirement of a minimum frontage of 100 feet because of language in the nature of a "grand-father" clause in (a) the present G. L. c. 40A, § 6 (as inserted by the revision and rearrangement of c. 40A by St. 1975, c. 808, § 3),[8] or (b) the former G. L. c. 40A, § 5A (as appearing in St. 1961, c. 435, § 1).[9] See *Clarke* v. *Board of*

---

[8] The pertinent language of the present § 6 is as follows: "Any increase in area, frontage, width, yard or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use which at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage."

[9] The comparable language (and other additional language not relied on by Deady) is included in the following provision of the earlier version of c. 40A, § 5A: "Any lot lawfully laid out by plan or deed duly recorded, as defined in section eighty-one L of chapter forty-one, or any lot shown on a plan endorsed with the words 'approval under the subdivision control law not required' or words of similar import, pursuant to section eighty-one P of chapter forty-one, which complies at the time of such recording or such endorsement, whichever is earlier, with the minimum area, frontage, width, and depth requirements, if any, of any zoning ordinance or by-law in effect in the city or town where the land is situated, notwithstanding the adoption or amendment of provisions of a zoning ordinance or by-law in such city or town imposing minimum area, frontage, width, depth, or yard requirements, or more than one such requirement, in excess of those in effect at the time of such recording or endorsement (1) may thereafter be built upon for residential use if, at the time of the adoption of such requirements or increased requirements, or while building on such lot was otherwise permitted, whichever occurs later, such lot was held in ownership separate from that of adjoining land located in the same residential district, or (2) may be built upon for residential use for a period of five years from the date of such recording or such endorsement, whichever is earlier, if, at the time of the adoption of such requirements or increased requirements, such lot was held in common ownership with that of adjoining land located in the same residential district; and further provided, in either instance, at the time of building (*a*) such lot has an area of five thousand square feet or more and a frontage of fifty feet or more, is in a district zoned for residential use, and conforms except as to area, frontage, width, and depth with the applicable provisions of the zoning ordinance or by-law in effect in such city or town and (*b*) any proposed structure is to be located on such lot so as to conform with the minimum requirements of front, side, and rear yard set-backs, if any, in effect at the time of such recording or such endorsement, whichever is earlier, and to all other requirements for such structure in effect at the time of building."

*Appeals of Nahant,* 338 Mass. 473 (1959), and *Vetter* v.
*Zoning Bd. of Appeal of Attleboro,* 330 Mass. 628 (1953).
The plaintiff argues in her supplemental brief that Deady
cannot prevail on this issue because "[t]he record does not
reflect that [Deady's] land complied with the requirements
of the zoning ordinance in effect at the time when he
recorded his ownership of the lot in question. He therefore
may not claim the benefit of compliance with an ordinance
whose requirements are not before the court."

The plaintiff's position is well taken. The record before
us is inadequate to enable us to pass on this issue. The zon-
ing by-law was not included in the record on appeal and is
not an appropriate subject of judicial notice. *Lawrence* v.
*Falzarano,* 380 Mass. 18, 25 n.10 (1980). "Neither a trial
judge nor this court can consider such alleged [by-laws]
unless they are put in evidence." *Fournier* v. *Central Taxi
Cab, Inc.,* 331 Mass. 248, 249 (1954), and cases cited.
*Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Ad-
ministration & Fin.,* 369 Mass. 562, 568 (1976). There are
no findings, nor is there any agreement in the record, suffi-
cient to enable us to determine whether, on the facts and
the law applicable thereto, Deady's lot is exempt from the
frontage requirement of the present by-law.

Quite apart from the reason stated above for not deciding
this issue on the record which is before us, there is a second,
more compelling reason for not doing so. We have already
noted above that this issue was not raised before the board.
If Deady is correct in his present contention that his lot is ex-
empt from the frontage requirement, he may have been en-
titled as of right to a building permit for a single family
dwelling; and if the inspector, upon a proper application,
refused to issue such a permit, Deady's next step would have
been an appeal to the board. G. L. c. 40A, §§ 7, 8 and 14.
If, after having taken those steps, he were aggrieved by the
action of the board, judicial review of that action would be
available to him by an appeal to the Superior Court under
G. L. c. 40A, § 17. Deady, however, did not follow that
route. Instead he applied in the first instance for a vari-

ance, an action which may in fact be inconsistent with the present claim of entitlement to a permit as of right.[10] The factual and legal basis on which to judge the propriety of the board's grant or denial of a variance, or to review the action of the judge of the Superior Court thereon, is not the same as it would be if the original application had been for a permit as of right. *Chater* v. *Board of Appeals of Milton*, 348 Mass. 237, 241-243 (1964). Therefore, we conclude that the issue tendered cannot be raised for the first time in this court. *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Administration & Fin.*, 369 Mass. 562, 565 (1976). "Our cases hold consistently that a nonjurisdictional issue not presented at the trial level need not be considered on appeal." *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 88 (1977), and cases cited. *Green* v. *Board of Appeal of Norwood*, 358 Mass. 253, 257 (1970). See *Kelsey* v. *Hampton Court Hotel Co.*, 327 Mass. 150, 152 (1951), and cases cited.

2. *Variance.* General Laws c. 40A, § 10, as appearing in St. 1975, c. 808, § 3, authorizes a board of appeals to grant a variance with respect to particular land where it "specifically finds [a] that owing to circumstances relating to the soil conditions, shape, or topography of such land . . . and especially affecting such land . . . but not affecting generally the zoning district in which it is located, [b] a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, . . . [c] that desirable relief may be granted without substantial detriment to the public good and [d] without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law."[11] This court has repeatedly held that no variance can be granted unless all of the requirements of this statute are

---

[10] While Deady might have proceeded simultaneously along two routes, one by application for a permit as of right, and the other by application for a variance, he did not do so.

[11] See note 4, *supra*, for a comparison of the quoted language of this statute and the earlier version thereof, G. L. c. 40A, § 15, as appearing in St. 1958, c. 381.

met. See, e.g., *City Council of Waltham* v. *Vinciullo,* 364 Mass. 624, 631 (1974); *Garfield* v. *Board of Appeals of Rockport,* 356 Mass. 37, 40-41 (1969); *Smith* v. *Zoning Bd. of Appeals of Scituate,* 347 Mass. 755, 758 (1964); *Ferrante* v. *Board of Appeals of Northampton,* 345 Mass. 158, 161 (1962); *Wrona* v. *Board of Appeals of Pittsfield,* 338 Mass. 87, 90 (1958); *Atherton* v. *Board of Appeals of Bourne,* 334 Mass. 451, 454 (1956).

"[T]he burden rests upon the person seeking a variance and the board ordering a variance to produce evidence at the hearing in the Superior Court that the statutory prerequisites have been met and that the variance is justified." *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 555-556 (1962). *Boyajian* v. *Board of Appeal of Wellesley,* 6 Mass. App. Ct. 283, 284 (1978). *Cass* v. *Board of Appeal of Fall River,* 2 Mass. App. Ct. 555, 557-558 & n.5 (1974).

The Zoning Act, G. L. c. 40A, requires in § 10 that if the board grants a variance it must "specifically find" the facts which constitute the prerequisites therefor, and it requires in § 15 that the board "shall cause to be made a detailed record of its proceedings . . . setting forth clearly the reason or reasons for its decision and of its official actions . . . ." This requirement for specific findings and a detailed record of the board's proceedings and the reason or reasons for its decision "is not satisfied by a mere repetition of the statutory words." *Brackett* v. *Board of Appeal of the Building Dept. of Boston,* 311 Mass. 52, 54 (1942). The decision of the board is invalid on its face if "[t]he board did not make the explicit findings which are prerequisite to the granting of a variance and which, as we have often said, are not supplied by a bare recital of the statutory conditions essential to the granting of a variance." *McNeely* v. *Board of Appeal of Boston,* 358 Mass. 94, 103 (1970).

As to the last three of the four statutory prerequisites which the board is required to find before granting a variance (G. L. c. 40A, § 10), the decision of both the board and of the judge thereon appear to be little more than "a bare recital of [three of] the statutory conditions essential to

the granting of a variance." *McNeely* v. *Board of Appeal of Boston, supra* at 103.[12] As to the first of the statutory prerequisites, both the board and the judge made some additional findings, but they too fail to satisfy the statutory requirement. The board's decision describes the size, shape and topography of the lot in question but fails to identify "circumstances . . . especially affecting such land . . . but not affecting generally the zoning district in which it is located." G. L. c. 40A, § 10. The finding made by the master and adopted by the judge on this point describes the size, shape, and topography of the lot and of the surrounding area, and then continues as follows: "The frontage of lot #33 does not meet the frontage requirement of the Zoning By-laws as a result of the conveyance of lot #32 by the prior owner of both parcels. This circumstance is a condition which affected lot #3T, but did not affect generally the zoning district in which said lot is located."

It seems clear from the decisions of the board and of the judge that the only circumstance "especially affecting . . . [lot #33], but not affecting generally the zoning district in which it is located," is the fact that lot 33 has a frontage of less than 100 feet. If the Legislature intended the mere fact of a deficiency in the required frontage of a lot to be sufficient, without more, to satisfy this particular prerequisite for a variance, it is difficult to believe that they would not have said so in this statute. They did not do so, and we believe that they did not intend that result. We hold that the findings by the board and by the judge on this prerequisite to the granting or upholding of a variance do not satisfy the requirements of G. L. c. 40A, § 10.

---

[12] These three findings by the judge are as follows:

"2. A literal enforcement of the provisions of the Zoning By-laws would involve substantial hardship to the present owner.

"3. The desired variance may be granted without detriment to the public good.

"4. The desired variance may be granted without nullifying or substantially derogating from the intent or purpose of the Zoning By-laws."

The corresponding findings by the board are in slightly different language, but they too are basically a repetition of the statutory language.

In annulling the decision of the board which had granted Deady a variance, the Appeals Court relied solely on its holding in *Raia* v. *Board of Appeals of N. Reading,* 4 Mass. App. Ct. 318 (1976). That case involved the purchase of two adjoining lots of land, each having the 125 foot minimum frontage required by the zoning by-law in effect at the time of the purchase. Five years after this purchase, the owner sold one lot, still vacant, to a buyer who obtained a permit to build a house thereon. After the foundation had been built, the building inspector revoked the permit because at some time during the five-year period during which the two lots were in common ownership, the zoning by-law had been amended by increasing the required minimum frontage to 160 feet. The owner then applied for and was granted a variance by the board of appeals. The Superior Court affirmed. The Appeals Court, however, reversed the judgment and annulled the decision of the board as in excess of its authority. It did so on the ground that the purchaser had failed to prove the existence of the statutory prerequisites to the granting of a variance. The court stated that it was not enough to show merely that the purchaser had expended a substantial amount of money in building the foundation, or to show that there were other nonconforming buildings in the area, because neither fact constituted a condition especially affecting the lot in question but not affecting that zoning district generally. *Id.* at 321-322. It further held that because the two adjoining lots were in common ownership when the minimum frontage was increased from 125 feet to 160 feet, "[t]he division of that property into two nonconforming lots did not create a substantial hardship especially affecting the vacant lot, even though the latter could not be built upon, as it could have remained part of a conforming lot." *Id.* at 322. The latter holding is substantially in accord with a series of earlier decisions by this court. See *Alley* v. *Building Inspector of Danvers,* 354 Mass. 6, 7 (1968); *Sorenti* v. *Board of Appeals of Wellesley,* 345 Mass. 348, 353 (1963); *Bruzzese* v. *Board of Appeals of Hingham,* 343 Mass. 421, 423-424 (1962); *Vet-*

*ter* v. *Zoning Bd. of Appeal of Attleboro,* 330 Mass. 628, 630-631 (1953).

If circumstances exist sufficient to distinguish this case from *Raia,* they have not been made a part of this record. For all that appears, both cases present a situation in which an owner of a larger tract of land conveyed to another a portion thereof which did not meet the minimum frontage requirements of the then existing zoning by-law, with the result that the new owner was unable to obtain a building permit. He therefore sought a variance. The creation of a nonconforming parcel by such a conveyance does not, without more, entitle the purchaser to a variance.

In the circumstances of this case we hold, as did the Appeals Court, that the judgment of the Superior Court is to be reversed, and that a new judgment is to be entered to the effect that the decision of the board of appeals was in excess of its authority and that it is therefore annulled.

*So ordered.*