Fecteau, J.
This is an appeal by the plaintiff, under the provisions of G.L.c. 40A, §17, challenging the denial by the defendants of an application for a variance from the dimensional requirements of the zoning by-law of the Town of Shrewsbury. In particular, the plaintiff seeks a variance from the minimum frontage requirement in order to build a single-family home.
This matter came on for trial before me sitting without jury on January 4-5, 2000. Upon consideration of the credible evidence, I make the following findings of fact and rulings of law.
FINDINGS OF FACT
1. The plaintiff is the owner of a parcel of land located in the Town of Shrewsbury at the westerly end of Farview Avenue at an intersection with Westvale Avenue, a way not in existence on the ground but as shown upon a plan which is recorded in Plan Book 141, Plan 84. (Ex. 4.) The parcel in question is made up of lots 2, 7 and, arguably, a portion of 25 as shown on this plan. It has been the owner of this parcel since 1951. Both the preparation and recording of the plan and the acquisition of the land by the plaintiff pre-dated the application of the subdivision control law.
2. The parcel in question is located within the “residence B-l zone,” as shown on the Town of Shrewsbury zoning map. (Ex. 2b.) According to the zoning by-law of the Town of Shrewsbury, in order to obtain a building permit for construction of a building on a parcel in this zone, a minimum lot size of 12,500 square feet and a minimum frontage on a public or approved way of 100 feet are required. (Ex. 2a., Section VII, Table II.)
3. The parcel in question contains an area well in excess of the minimum area requirement. The proposed single-family home is intended for the portion of the parcel consisting of Lots 2 and 7 which are on the westerly side of Westvale Avenue; it is roughly triangular in shape and is unimproved and wooded. According to the 1946 Plan, it narrows from approximately 101 feet, at its southern (or Keswick) end to approximately 8.5 feet at its northern (or Farview) end. Lot 25 is on the easterly side of Westvale and is approximately rectangular in shape.
4. When the plaintiff acquired the lots in question, they were but 3 of 30 lots, as shown on the 1946 plan, purchased at the same time. (Ex. 1.)
5. The 1946 Plan allowed for a number of roads, including Keswick and Farview Avenues, both intersecting South Street, an existing public way in the Town of Shrewsbury, and Upland, Golden Hill and Westvale Avenues, all of which are parallel and intersecting both Keswick and Farview. Among the lots acquired by the plaintiff were all the lots which abutted Westvale and Golden Hill on both sides, all the lots on Farview between Golden Hill and Westvale on both sides, and all the lots that abutted Keswick on its northwesterly side, resulting in the plaintiff s ownership of the entire block between Keswick, Westvale, Farview and Golden Hill Avenues, as well as all lots along the other sides of Golden Hill and Farview from this block.
6. Beginning shortly after its acquisition of the property in 1951, the plaintiff began to sell individual lots to third parties, including all but a portion of one lot across Westvale Avenue (lot 25) from the parcel in question, two of which also abut Keswick and Farview, so that from 1967, the plaintiff no longer owned all the property on both sides of Westvale, on both sides of Farview between Westvale and Golden Hill and on the northwesterly side of Keswick.
7. Lot 2, on the westerly side of Westvale and at its southern end, appears to have in excess of 100 feet of frontage on Westvale, as does lot 7. Lot 7 appears to be a “buildable” lot, given current area requirements, had Westvale been developed. Lot 2 does not have sufficient area to meet the current area minimum. Westvale Avenue has never been constructed on the ground, nor does it appear to be passable by motor vehicle.
8. Assuming that the plaintiff owns up to the center line of Westvale Avenue, it has approximately 28.5 feet of frontage on Farview Avenue. Without this 20-foot strip of land that extends the length of Westvale, on the plaintiffs side of the way, its frontage decreases to 8.5 feet. Even when excluding the area of this strip, the plaintiffs parcel exceeds the minimum area requirement.
9. On August 25, 1998, the plaintiff filed its application with the zoning board of appeals seeking the grant of a variance, in order to construct a single-family home. A public hearing was held on October 7, 1998. The board filed its decision with the town clerk on October 29, 1998, denying the application.
*451 RULINGS OF LAW
In reviewing the action of a zoning board of appeal in either the grant or denial of a variance, the court hears the matter de novo, and determines the validity of the board’s decision upon the facts as found by the court. Josephs v. Bd. of Appeals of Brookline, 362 Mass. 290, 295 (1972). “(T]he burden is on the person seeking the variance ... to produce evidence that each of the discrete statutory prerequisites has been met and that the variance is justified.” Guiragossian v. Bd. of Appeals of Watertown, 21 Mass.App.Ct. 111, 115 (1985), rev. denied 396 Mass. 1105 (1986).
No one has a legal right to a variance; it is a disfavored form of relief which should be granted sparingly. Guiragossian, id. A local zoning board may, in its discretion, grant a variance if all three conditions of G.L.c. 40A, §10 are met. The three conditions are “(1) that owing to circumstances relating to the soil conditions, shape, or topography of such land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located, ... [2] a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, and ... [3] that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law.” G.L.c. 40A, §10 (1994 ed.). These three requirements are conjunctive, not disjunctive; and a failure to establish any one of them is fatal. Kirkwood v. Bd. of Appeals of Rockport, 17 Mass.App.Ct. 423, 428 (1984).
Considering the first of the three statutory conditions that must be present in order for a variance to be granted, there is no evidence that the plaintiff is suggesting that the soil conditions or the topography of the parcel in question entitle it to a variance. It seeks consideration by reason of the shape of the parcel. However, there is nothing unique about the shape of the parcel that causes non-conformity with the zoning by-law; rather, it is solely the lack of frontage to meet the minimum requirement from which the plaintiff here seeks relief Granted, the shape of the two lots combined together do give it a different shape than most of the other lots in this neighborhood. One test for determining whether it is the shape that constitutes a hardship in construction of a building is whether minimum widths, or minimum front, rear and side set-back requirements are implicated. Here, there is no evidence that a building cannot be placed on the lot without relief from such requirements.
In the case of Guiragosian v. Board of Appeals of Watertown, supra, the court related the elements of shape and hardship as follows;
Kruszewski [the landowner] fails to recognize, however, the symbiotic relationship between the shape and hardship requirements set forth in §10 and the level of proof necessary to justify a finding that any claimed hardship is “substantial.” The present c. 40A, §10, imposed new requirements for variances, namely, that the hardship alleged must arise from the shape of the locus or one of the other factors specifically referred to in §10. An applicant for a variance must show that the land’s shape, alone or in combination with other features of the land, prohibits development consistent with the ordinance.
At 118.
This case appears indistinguishable from that of Warren v. Zoning Board of Appeals of Amherst, 383 Mass. 1 (1981). There, the case before the court concerned a division of a single lot with house thereon into two, wherein a frontage variance was sought for an unimproved lot intended to be sold off. There, the court said:
It seems clear from the decisions of the board and of the judge that the only circumstance “especially affecting . . . [lot 433], but not affecting generally the zoning district in which it is located,” is the fact that lot 33 has a frontage of less than 100 feet. If the Legislature intended the mere fact of a deficiency in the required frontage of a lot to be sufficient, without more, to satisfy this particular prerequisite for a variance, it is difficult to believe that they would not have said so in this statute. They did not do so, and we believe that they did not intend that result.
Warren, supra, at 11. This decision has been followed often with approval. In Karet v. Zoning Board of Appeals of Worcester, 27 Mass.App.Ct. 439 (1989), the court stated, at p. 440: “The variance cannot stand. It is clear now, if it was not at the time the judge heard the case, that a deficiency in the frontage of a lot is not a ‘circumstance relating to the soil conditions, shape or topography of such land’ that will satisfy one of the several statutory prerequisites for a variance under G.L.c. 40A, §10, as amended ...” See also Tsagronis v. Board of Appeals of Wareham, 415 Mass. 329, 331 (1993).
The plaintiff relies on the case of Paulding v. Bruins, 18 Mass. 707 (1984). That reliance is misplaced, due to the fact that the locus in question there had, not only a frontage issue but a unique circumstance affected by its shape, namely, it was a pork-chop shape that was in non-conformity with a minimum width requirement among other features. “Thus, because both the board and the judge found unusual characteristics of the lot apart from the absence of the required frontage and width, the Warren case is not controlling.” At 711.
Hardship is defined as “not being able reasonably to use the property for the purposes, or in the manner, allowed by the municipal zoning requirements.” Healy, Massachusetts Zoning Manual, at 9-13 (1989). It is *452 true, as the plaintiff suggests, that being unable to develop and use a parcel as permitted in the zone may constitute a hardship; that alone is insufficient, however. Moreover, as desirable as it may be that the town be able to collect more in tax revenue as well as have the parcel occupied rather than allowing it to be a place for private dumping, again as the plaintiff suggests, these factors cannot overcome the requirement that hardship relate to soil, shape or topography.
The official zoning map of the town was effective as of August 2, 1967, and the by-law in evidence makes reference to adoption by vote of the town on June 19, 1967. It was not shown whether this was the first zoning by-law it adopted or whether the first minimum frontage of 100 feet was created by this by-law. Although it was not shown in the evidence, it may be that the plaintiff had conveyed parcels prior to any frontage requirement.
The deeds out from the plaintiff to the third parties as shown in exhibits 5-8 all show “metes and bounds” along Westvale Avenue. The plaintiff was in a position to develop and build Westvale Avenue and it chose not to do so. Had Westvale Avenue been built, both lots 2 and 7 would have had frontage thereon. The lack of sufficient frontage on a public or approved way appears, therefore, to have been a product of the plaintiffs own creation since it chose not to develop Westvale at a time when it owned all the lots on both sides. As it was stated in Tsagronis v. Board of Appeals of Wareham, supra, at 332: “the hardship is solely due to the failure of the owner of the locus to construct a house on the undersized locus before statutory protections against the zoning changes ran out. That kind of hardship does not justify the granting of a variance. ” Construction of Westvale was clearly contemplated by the 1946 plan and the deeds which refer to both the plan and Westvale Avenue. Moreover, it is clear from the 1946 plan that the designer had in mind the notion of minimum frontage needs, if not requirements, since among the 40 lots shown on this plan, 37 have frontage of at least 80 feet on ways contemplated by the plan and the least amount of frontage of any lot is 64.2 feet (lot 5).
In conclusion, therefore, the plaintiff, having the burden of satisfying all of the statutory requirements justifying the grant of a variance and failing to do so, a judgment in favor of the defendants is required which affirms the denial of the plaintiffs application.
ORDER FOR JUDGMENT
For the foregoing reasons, it is ordered that a judgment shall enter which AFFIRMS the decision of the Town of Shrewsbury Zoning Board of Appeals which had denied the plaintiffs application for a variance to construct a single family home upon the parcel shown as Lots 2 and 7 on a 1946 plan of land recorded as Plan 84 in Plan Book 141 in the Worcester District Registry of Deeds.