Wexler, James H., J.
Pursuant to G.L.c. 40A, §17, plaintiff Dennis R. Bouvier appeals a decision by the town of Blackstone zoning board of appeals, dated March 22, 2002, which granted a variance to defendant Daniel R. Poirier, the owner of real property located on 29 Farm Street, in Blackstone, MA. A trial was held on June 6, 2005. Based upon the stipulations of the parties and all the credible evidence and reasonable inferences that may be based on that evidence, the Court makes the following findings of fact and rulings of law.
Poirier resides at 15 Hoyle Circle, in Blackstone, Massachusetts. In 1995, Poirier gained title to lot four, plat 4, located at 29 Farm Street, in Blackstone, Massachusetts, within zone R-l.[2] This lot contains 1.32 acres, and has no frontage on any public way.
*634 Bouvier resides at 31 Farm Street, in Blackstone, Massachusetts. He acquired this 0.42-acre lot in 1997.
Ralph Lovejoy lives at 33 Farm Street, adjacent to the Bouvier property. His residence is located approximately 16.4 feet away from the Bouvier residence.
The Farm Street parcels now owned by Bouvier and Poirier were held in common ownership until 1916. At that time, the parcel now owned by Bouvier was conveyed by Elizabeth Walsh to Jean and Joseph Giguere, encumbered by an easement allowing Walsh access to Farm Street via the Giguere parcel. The 1916 deed contained the following language:
I, Elizabeth Walsh ... do hereby REMISE, RELEASE, and forever QUITCLAIM unto the said Jean B. Giguere and Joseph E.Giguere, a certain parcel of land . . . Together with the right to pass and repass on foot or with teams from said premises over a strip of land of said Jean B. Giguere ten feet in width adjoining the southerly line thereof to said Farm Street, said way to be used by any and all persons to cross to said granted premises
This easement benefits the dominant Poirier parcel, and burdens the servient Bouvier parcel. The 10-foot wide right of way extends a distance of 243 feet from Farm Street to the Poirier property, passing between the Bouvier and Lovejoy residences. At its closest point, the easement is approximately 3.4 feet from the Lovejoy residence and 3.0 feet from the Bouvier residence.
Poirier wishes to build a single-family dwelling on the lot at 29 Farm Street. Pursuant to Blackstone Town Code §123-3,[3] Poirier applied on October 31, 2000 to the Blackstone zoning board of appeals (hereinafter “the Board”) for a variance from the frontage requirement of Blackstone Town Code §123-13,[4] which requires a minimum of 150 feet of frontage on residential properties.
The Board initially denied the variance.[5] Poirier then brought an appeal in Superior Court.[6] The case was transferred to the Federal District Court, and then remanded to the Board. On March 14, 2001, Poirier reapplied to the Board for a variance.
On February 20, 2002, the Board held a public hearing on the matter.
On March 22, 2002, the Board issued a Notice of Variance, allowing Poirier to construct a single-family dwelling at 29 Farm Street despite the lack of frontage. The document stated:
Notice is hereby given that a Conditional or Limited Variance or Special Permit has been granted
TO: Daniel E. Poirier
IDENTIFY LAND ACCEPTED
PLAT 4 LOT 4 ZONE R-1
By the town of Blackstone Board of Appeals affecting the right of the owner with respect to the use of premises on
29 Farm Street Blackstone Street City or Town
IF THE RIGHTS AUTHORIZED BY A VARIANCE ARE NOT EXERCISED WITHIN ONE YEAR OF THE DATE OF GRANT OF SUCH VARIANCE SUCH RIGHTS WILL LAPSE.
Approval subject to the following conditions:
25-foot minimum setback on all sides and approval by other town boards
Statement of reasons for the Board of Appeals
The board reviewed a 1916 deed and accompanying plan showing that the lot at 29 Farm Street has the benefit of a 10-foot-wide easement to Farm Street
Board Finds as follows:
A. A literal enforcement of the provisions of the Zoning by-laws would involve a substantial hardship to the petitioner because the lot in question is a back lot with no frontage.
B. The hardship is owing to unique circumstances relating to the shape of the land the lot is 100 percent land locked.
C. There is no substantial detriment to the public good.
THIS VARIANCE SHALL TAKE EFFECT FROM DATE GRANTED. COPY REQUIRED TO BE RECORDED AT WORCESTER DISTRICT REGISTRY OF DEEDS PURSUANT TO GENERAL LAWS, CHAPTER 40A SECTION 11, AS AMENDED AND FURTHER THAT SAID RECORDING SHALL BE ACCOMPLISHED NOT LATER THAN SIX MONTHS FROM THE DATE OF THIS DECISION AND FURTHER IF THE RIGHTS AUTHORIZED BY A VARIANCE ARE NOT EXERCISED WITHIN ONE YEAR OF THE DATE OF GRANT OF SUCH VARIANCE SUCH RIGHTS SHALL LAPSE.
IT WAS ORDERED BY THE BOARD THAT PERSONS NOTIFIED OF THE HEARING BE NOTIFIED OF THE FOREGOING DECISION.
ANY APPEAL TO THIS DECISION MUST BE MADE TO THE DISTRICT OR SUPERIOR COURT OR LAND COURT WITHIN 20 DAYS OF THE FILING OF THIS DECISION WITH THE TOWN CLERK, IN ACCORDANCE WITH SECTION 17 OF CHAPTER 40A OF MASSACHUSETTS GENERAL LAWS.

DISCUSSION

A. AGGRIEVED STATUS

Pursuant to G.L.c. 40A, §17 “[a]ny person aggrieved by a decision of the board of appeals . . . whether or not previously a parly to the proceeding . . . may appeal to the superior court department.” A court has jurisdiction to hear such an appeal only if the plaintiff *635 is “aggrieved.” Barvenik v. Alderman of Newton, 33 Mass.App.Ct. 129, 131 (1992).
The determination of whether a party is aggrieved “is a matter of degree . . . and the variety of circumstances which may arise seems to call for the exercise of discretion rather than the imposition of an inflexible rule.” Rafferty v. Sancta Maria Hospital, 5 Mass.App.Ct. 624, 629 (1977).
Abutters benefit from a rebuttable presumption of aggrieved person status. Rafferty, 5 Mass.App.Ct. at 629. If standing is challenged, the burden of proof lies with the plaintiff and the issue of standing is decided on the evidence “with no benefit to the plaintiffs from the presumption.” Rafferty, 5 Mass.App.Ct. at 629.
In order to prove inclusion in the limited class of persons aggrieved by a zoning decision, a plaintiff must demonstrate by direct facts that his injury is “special and different from the concerns of the rest of the community.” Rafferty, 5 Mass.App.Ct. at 632. He must present credible evidence demonstrating:
[a] reasonable likelihood that the granting of a special permit will result, if not in a diminution in the value of his property, at least in his property or legal rights being more adversely affected by the activity authorized by permit than (a) they are by present uses and activities or (b) they would be as a result of the uses and activities permitted as of right on the defendant’s locus.
Rafferty, 5 Mass.App.Ct. at 133. Poirier argues that Bouvier does not qualify as an aggrieved person and therefore lacks standing as required for judicial review.
Bouvier asserts that he is aggrieved by the Board’s decision to allow construction of a single-family residence on Poirier’s property, given that the only street access to Poirier’s lot is a 10-foot right of way over Bouvier’s land, which is likely to generate an increase in traffic through his property. Bouvier also argues that the ten-foot wide easement will need to be kept clear of snow in the winter in order for vehicles to travel to and from the defendant’s residence. He states that snow blowing or shoveling of the easement will invariably result in snow piles on Bouvier’s property.
Bouvier’s concerns reflect the significant likelihood that his property rights will be negatively affected by the residential use of Poirier’s property. Although the right of way appurtenant to Poirier’s parcel grants Poirier the right to pass through Bouvier’s land, winter usage of the narrow easement will require that snow be removed, which is indeed likely to result in snow piles on Bouvier’s property. Given that Bouvier’s residence is located just three feet from the easement, the resulting snow banks are apt to interfere with Bouvier’s residential drainage and exhaust systems and to diminish the aesthetic quality of Bouvier’s surroundings. This impact on Bouvier’s property rights is “special and different from the concerns of the rest of the community.” Rafferty, 5 Mass.App.Ct. at 632. As a result the Court finds that Bouvier has established his standing as an aggrieved person pursuant to G.L.c. 40A, §17.
B. THE REVIEW OF THE GRANT OF A VARIANCE
Under G.L.c. 40A, §10, a zoning board of appeals may grant a variance to a parcel of land if it (1) “specifically finds that” (2) “owing to circumstances relating to the soil conditions, shape, or topography of such land . . . and especially affecting such land . . . but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant” (3) “that desirable relief may be granted without substantial detriment to the public good,” and (4) “without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law.”
A variance may not be granted unless all of these requirements have been met. Warren v. Zoning Board of Appeals of Amherst, 383 Mass. 11, (1981); City Council of Waltham v. Vinciullo, 364 Mass. 624, 631 (1974). Moreover, variances must be granted sparingly. Damaskos v. Bd. Of Appeal of Boston, 359 Mass. 55, 61 (1971).
When a decision of a zoning board of appeals is challenged, “[t]he burden rests upon the person seeking a variance and the board ordering a variance to produce evidence at the hearing in the Superior Court that the statutory prerequisites have been met and that the variance is justified.” Dion v. Board of Appeals of Waltham, 344 Mass. 547, 555-56 (1962).
The Board must “specifically find” that the statutory requirements for a variance have been met. G.L.c. 40A, §10. “The decision of the board is invalid on its face if the board did not make the explicit findings which are prerequisite to the granting of a variance and which, as we have often said, are not supplied by a bare recital of the statutory conditions essential to the granting of a variance.” Warren, 383 Mass. at 11 (quoting McNeely v. Board of Appeal of Boston, 358 Mass. 94, 103 (1970)).
In support of its March 26,2002 Notice of Variance, the Board stated:
A. A literal enforcement of the provisions of the Zoning by-laws would involve a substantial hardship to the petitioner because the lot in question is a back lot with no frontage.
B. The hardship is owing to unique circumstances relating to the shape of the land the lot is 100 percent land locked.
C. There is no substantial detriment to the public good.
This is little more than a recitation of the statutory conditions requisite to avariance. Moreover, the Board *636 fails to even address the final requirement: “that desirable relief may be granted . . . without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law.’’ G.L.c. 40A, §10.
The second statutory requirement demands that Poirier and the Board establish that “owing to circumstances relating to the soil conditions, shape, or topography of such land . . . and especially affecting such land . .. but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner of appellant.” G.L.c. 40A, §10.
Attempting to satisfy this prong of the test for a variance, the Board has asserted that “a literal enforcement of the provisions of the Zoning by-laws would involve a substantial hardship to the petitioner because the lot in question is a back lot with no frontage.”
Bouvier asserts that the shape of Poirier’s parcel is not unique. He argues that the right of way and lack of frontage cannot be considered as factors creating a unique shape.
Poirier states only that his parcel is unique in shape, and that a literal enforcement of the zoning by-laws would cause substantial economic hardship. He relies on Pauldings v. Brains, in which a variance from a frontage requirement was allowed to a lot with a unique shape. 18 Mass.Ct. 707, 712 (1984).
The Court finds the shape of the Poirier parcel unremarkable. The Bouvier parcel affronts Farm Street to the west, and the Poirier parcel to the east. Thus, the Poirier land sits directly behind the Bouvier property in relation to Farm Street. The border between the Bouvier and Poirier parcels forms a straight line, parallel to Farm Street and set back 243 feet. Abutting the Lovejoy property, the southern edge of the Poirier parcel is also a straight and even border, forming a right angle with the western property line. To the north, the Harris Pond sits adjacent to the Poirier land and forms a slightly curvaceous border. The eastern aspect of the Poirier property curves irregularly along Woonsocket city line.
In Paulding, the court allowed a variance from a thirty-foot frontage requirement to a parcel with fifteen feet of frontage. 18 Mass.App.Ct. at 707, 712. The property’s width fanned out behind its narrow frontage in a manner described by the court as uniquely resembling a pork chop. Paulding, 18 Mass.App.Ct. at 710.
In contrast, the Poirier property lacks frontage on a public way. The land forming the easement appurtenant to the Poirier parcel is part of the Bouvier property, and thus cannot be considered as part of the shape of the Poirier property. The shape of the Poirier parcel is not particularly unique, as several lots in the immediate vicinity demonstrate irregular shapes and borders. Furthermore, the end of the Poirier property closest to Farm Street is best described as rectangular in shape.
The Board uses circular logic to conclude that hardship would result from enforcement of the frontage requirement “because the lot in question is a back lot with no frontage . . . owing to unique circumstances relating to the shape of the land the lot is 100 percent land locked.” The same argument was denied in Warren v. Zoning Board of Appeals, 383 Mass. 1,11 (1981):
It seems clear from the decisions of the board and of the judge that the only circumstance ‘especially affecting [the lot in question] but not affecting generally the zoning district in which it is located,’ is the fact that [the lot in question] has a frontage of less than 100 feet. If the legislature intended the mere fact of deficiency in the required frontage of a lot to be sufficient, without more, to satisfy this particular prerequisite for a variance, it is difficult to believe that they would have not said so in this statute. They did not do so, and we believe that they did not intend that result. We hold that the findings by the board ... on this prerequisite to the granting or upholding of a variance do not satisfy the requirements of G.L.c. 40A, §10.
The same conclusion must be reached in the present case. To find otherwise would be to defeat the purpose of having a frontage requirement.
Thus, neither Poirier nor the Board have established “circumstances relating to the soil conditions, shape, or topography of such land” as a result of which “a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship.” G.L.c. 40A, §10.
The allowance of a variance also requires “that desirable relief may be granted without substantial detriment to the public good.” G.L.c 40A, §10.
In relation to this requirement, the Board fails to meet its burden of proof, stating only that “there is no substantial detriment to the public good.” Similarly, Poirier merely asserts that his proposed residence would have no negative impact on the public good.
Bouvier argues that a residence on the Poirier parcel will result in increased traffic and snow deposits on the Bouvier and Lovejoy properties, and thus negatively impact the public good.
While snow piles and increased traffic are relevant to the property rights of Bouvier, these concerns do not threaten the general public. Snow piles generated by Poirier will affect only Poirier’s immediate neighbors, and the increase in traffic caused by one additional residence in the neighborhood cannot be deemed significant.
However, in the case of a fire on the Bouvier property, the lack of frontage on the Poirier parcel could pose a substantial detriment to the public good. With the only street access to the Poirier residence unavail *637 able, the spread of fire to the Poirier lot might prove quite difficult to stop. Emergency workers could face significant delays in reaching the inhabitants of the Poirier residence. Thus, the Court finds that the allowance of a variance to the Poirier property could cause a substantial detriment to the public good.
Finally, Poirier and the Board must demonstrate “that desirable relief may be granted without . . . nullifying or substantially derogating from the intent or purpose of such ordinance or by-law." G.L.c. 40A, §10.
Blackstone’s zoning regulations are set forth in Chapter 123 of the Blackstone Code. The intent or purpose of Blackstone’s residential frontage requirement is not explicitly stated in the Blackstone Code; §123-1 states, “[t]his Zoning Chapter is enacted . . . for the purpose of guiding the sound development of the Town of Blackstone.”
The Board does not address whether a variance will derogate from the intent or purpose of the frontage requirement.
Poirier argues that a variance to his parcel does not derogate from the intent or purpose of the frontage requirement, because his property exceeds all the other minimum intensity requirements set forth by the Blackstone Town Code.
Bouvier argues that the allowance of a variance will derogate from the purpose of the requirement by increasing neighborhood traffic and population density, and by undermining the aesthetic quality of the space.
Bouvier and Poirier make arguments that are more directly relevant to the purpose and intent of lot area requirements. In MacNeil v. Avon, the court stated “Massachusetts case law supports the view that a rationale for minimum frontage requirements exists independently of reasons for minimum area requirements.” 12 Mass.App.Ct. 179, 183 (1981), (citing Dolan v. Board of Appeals of Chatham, 359 Mass. 699, 700-01 (1971); Howland v. Acting Superintendent of Bldgs. & Inspector of Bldgs. of Cambridge, 328 Mass. 155, 159-60 (1951)).
Minimum frontage requirements are traditionally enacted with the purpose of ensuring that eveiy lot “may be reached by the fire department, police department, and other agencies charged with the responsibility of protecting the public space, safety and welfare.” Gifford v. Planning Board of Nantucket, 376 Mass. 801, 808 (1978) (quoting Mitchell v. Morris, 94 Cal.App.2d. 446, 448-49 (1949)).
This being the case, the Court finds that the allowance of a variance to the Poirier parcel does derogate from the traditional purpose of a frontage requirement. Because there exists no street access to the Poirier land independent of the Bouvier frontage, emergency personnel might find themselves unable to reach the Poirier property in the case of a fire on the Bouvier land.

ORDER

The Defendants Poirier and the Blackstone Zoning Board of Appeals fail to establish the statutory requirements necessary to uphold the allowance of a variance. The Board’s decision is hereby overturned, and Poirier is denied a variance from the frontage requirement of the Blackstone Town Code.

R-1 is one of three residential districts in the town of Blackstone.

The Blackstone Code §123-3(B) states “[t]he Board of Appeals shall have and exercise all the powers granted to it by Chapters 40A, 40B and 41 of the General Laws and by this chapter. The Board’s powers are as follows: ... (2)... to hear and decide petitions for variances from the terms of this chapter including variances for use, with respect to particular land or structures.”

Blackstone Code §123-13 sets forth this requirement in a table entitled “Intensify of Use Schedule.”

The date of this denial is not provided by the evidentiary record.

The evidentiary record does not describe which Superior Court Division addressed the matter.