ROBERT F. WRIGHT & another[1] *vs.* BOARD OF APPEALS
OF FALMOUTH & another[2]
(and a companion case[3]).

Barnstable. March 19, 1987. — June 30, 1987.

Present: GREANEY, C.J., CUTTER, & SMITH, JJ.

*Zoning,* Lot, Exemption, Lot size, Amendment of by-law or ordinance.
*Statute,* Construction, Repeal.

With respect to a definitive subdivision plan approved by a town's planning
board on September 18, 1974, any protection provided by G. L. c. 40A,
§ 7A, as in effect prior to the substitution by St. 1975, c. 808, of a new
c. 40A, expired no later than September 18, 1981, so that lot owners'
1982 and 1983 applications for building permits were governed by a
1977 amendment to the zoning by-law increasing the minimum size of
residential lots in the area of the locus from 20,000 to 40,000 square
feet. [412-413]

Whatever protection from the effect of zoning by-law amendments might
still have been afforded in 1982 and 1983 by G. L. c. 40A, § 5A, as
in effect prior to the substitution by St. 1975, c. 808, of a new c. 40A,
was inapplicable to lots within a subdivision approved in 1974, where
the lots were not shown to have complied with the applicable minimum
area requirements in effect at that time. [413-414]

The fourth paragraph of G. L. c. 40A, § 6, as inserted by St. 1975, c. 808,
providing that increases in the lot size requirements of a zoning by-law
not apply to certain residential lots not held in common ownership,
afforded no protection to subdivision lots which had been conveyed in
a "checkerboard" pattern to separate owners after the date that the appli-
cable zoning by-law was amended. [414-415]

CIVIL ACTIONS commenced in the Superior Court Department
on July 13, 1982, and July 28, 1983, respectively.

[1] Edward L. Jacoubs.

[2] The building commissioner of Falmouth.

[3] Pamela Gilmore, trustee of Gilmore Falmouth Real Estate Trust, *vs.*
Board of Appeals of Falmouth & another.

The cases were consolidated for trial and were heard by *James J. Nixon*, J.

*Richard F. Benway* for Pamela Gilmore.

*Frank K. Duffy, Jr.,* Town Counsel, for Board of Appeals of Falmouth.

*John D. Riordan* for Robert F. Wright & another.

CUTTER, J. In 1973 Robert Wright and Edward Jacoubs (W & J) owned about forty acres of land (the locus) in Falmouth (the town). The facts stated below are based on "stipulated facts" in the record appendix.

### A. *Stipulated Facts*

In Janaury, 1973, W & J submitted to the town planning board and to the town clerk a preliminary plan for the subdivision of the locus, which lay in an Agricultural C (AGC) zone. At that time, the Falmouth zoning by-law required for the locus a minimum lot size of 15,000 square feet. On March 5, 1973, W & J submitted a revised preliminary plan reducing the number of lots.

On March 5, 1973, also, the town at its annual town meeting voted to increase the minimum lot size to 20,000 square feet by changing all AGC land to an Agricultural B (AGB) zone. The Attorney General, on April 25, 1973, approved the amendment of March 5, 1973.

On September 25, 1973, W & J filed a definitive plan with the town planning board and with the town clerk under G. L. c. 41, § 81S. This was done within seven months of the filing on March 5, 1973, of the revised preliminary plan and complied (in this respect) with former G. L. c. 40A, § 7A, prior to the substitution by St. 1975, c. 808, of a new c. 40A, effective as of various dates as indicated in the margin.[4]

---

[4] This litigation in various respects requires consideration of statutory provisions of former G. L. c. 40A and the present c. 40A. These statutes are referred to hereafter, respectively, as "old c. 40A" and "new c. 40A." The confusing question of when new c. 40A became effective (and for what purposes) has been the subject of discussion in two decisions: *Casasanta* v. *Zoning Bd. of Appeals of Medford,* 377 Mass. 67, 69-74 (1979), and *Shalbey* v. *Board of Appeal of Norwood,* 6 Mass. App. Ct. 521, 522-527, & n.1 at 524 (1978), which greatly clarify the statutory provisions. The

On April 16, 1974, the town planning board approved the definitive plan subject to the execution by W & J of a developer's covenant under G. L. c. 41, § 81U. This covenant was executed and filed with the town planning board on September 18, 1974, and approval of the definitive plan was endorsed by the board on that day. The definitive plan was filed seasonably in the registry of deeds. On September 11, 1981, the town planning board accepted a surety bond for $54,582 from W & J "to guaranty [*sic*] that the ways within the subdivision would be finished" and released the lots in the subdivision from the covenant given at the time of the approval of the definitive plan on September 18, 1974.

On June 29, 1977, at a special town meeting, the locus was rezoned by the town from an AGB zone to an Agricultural A (AGA) zone. This rezoning increased the minimum size for residential lots in the area of the locus from 20,000 square feet to 40,000 square feet.

On and prior to September 14, 1981, all seventy-six lots shown on the subdivision plan belonged to W & J as tenants in common. On September 15, 1981, W & J, by deeds recorded in the registry of deeds on September 17, 1981, conveyed all the lots shown on the subdivision plan to themselves as individuals and to four named real estate trusts (including Gilmore Falmouth Realty Trust) in such a manner that no person or trust named as owner of a lot also was named as owner of any adjacent lot.[5]

---

dispositions of provisions of old c. 40A among sections of new c. 40A may be ascertained by examining St. 1975, c. 808, §§ 3, 6, and 7 (as amended by St. 1977, c. 829, § 4), and the note and table appearing in 5 M.G.L.A. 2-3 (West 1979). See also Healy, Massachusetts Zoning Practice Under the Amended Zoning Enabling Act, 64 Mass. L. Rev. 757 (1979); Huber, The New Zoning Act, 1976 Ann. Surv. Mass. Law, § 15.1 et seq. (1976).

[5] This type of division of lots adopted by W & J has been described as "checkerboarding." See *Baldiga* v. *Board of Appeals of Uxbridge,* 395 Mass. 829, 834 & n.4 (1985), and has been employed in an effort to avoid compliance with zoning or subdivision requirements. See also *Sturges* v. *Chilmark,* 380 Mass. 246, 260-261 (1980); 2 Anderson, American Law of Zoning § 9.68 (3d ed. 1986); 2 Rathkopf, Zoning and Planning Survey, § 32.06 (1987) (where doubt is expressed, at 32-15 to 32-16, whether the device remains of significant usefulness in avoiding regulations); Mendler,

Pamela Gilmore, trustee of Gilmore Falmouth Realty Trust, as new owner of lot 35 within the subdivision shown on the definitive plan, in early 1982 applied to the town building commissioner (see note 2, *supra*) for a building permit to construct a single family residence on that lot. The application was denied by the commissioner and (on appeal from his decision under new c. 40A, § 15) by the town's board of appeals after public hearings. Similar 1983 appeals by Wright, as new owner of lot 72, and by Jacoubs as new owner of lot 70, were denied.

### B. *The Pending Litigation*

Complaints were initiated in the Superior Court (a) by Wright and Jacoubs and by Mrs. Gilmore, as trustee, against the town board of appeals and the town building commissioner, alleging essentially the facts already stated. These complaints were consolidated for trial. On the stipulated facts, a judge of the Superior Court essentially affirmed the decision of the town's board of appeals, deciding three issues adversely to the plaintiffs with essentially only the cursory explanation of his reasoning set out in the margin.[6] From the judgments entered on this decision, Wright, Jacoubs, and Mrs. Gilmore appealed. The town also appealed "seeking a clarification of the . . . [judge's] reasoning for . . . [his] decision."

### C. *Discussion*

1. The landowner plaintiffs contend that on September 18, 1974, when the town planning board endorsed the definitive

---

Massachusetts Conveyancers' Handbook, § 11:4.03 (3d ed. 1984 & Supp. 1987), where it is suggested that the Legislature "felt it needed to proscribe [checkerboarding] in the new" c. 40A, which the author (at least as to the new c. 40A, § 6) describes as "not clear in meaning or intent." See also the general discussion in *Lee* v. *Board of Appeals of Harwich,* 11 Mass. App. Ct. 148, 151 n.4 (1981).

[6] The three issues as stated by the trial judge were, "First: Could the plaintiffs avail themselves of the protection of . . . [old c. 40A, § 5A]? . . . Second: Did the plaintiffs properly avail themselves of the protection of . . . [old §] 5A so as to obtain permanent lot protection? . . . Third: did [the] plaintiffs otherwise obtain permanent lot protection under . . . [new §] 6?" As noted, the trial judge gave a negative answer to each of the three questions.

plan as approved, the by-law zoning provisions "in effect at the time of the submission of the first submitted plan . . . [began to] govern the" locus and did so "for a period of seven years from the date of [such] endorsement." For this contention, the plaintiffs rely on old c. 40A, § 7A.

2. To this contention, the town points out that the protection of old § 7A, as last amended by St. 1965, c. 366, § 1 (if it be assumed that old § 7A continued after the effective dates of new c. 40A to have any present effect at all), expired on September 18, 1981, and that no building permit was applied for by any plaintiff prior to early 1982, when Mrs. Gilmore applied for one, followed later (in 1983) by the other plaintiffs. The town thus correctly argues that each plaintiff applied for a building permit too late, i.e., after the expiration of the protection period. See *Building Inspector of Acton* v. *Board of Appeals of Acton,* 348 Mass. 453, 456 (1965); *Vazza* v. *Board of Appeals of Brockton,* 359 Mass. 256, 259-261 (1971). Compare *Smith* v. *Board of Appeals of Needham,* 339 Mass. 399, 402 (1959), where the exemption had not expired when application for a building permit was made.

3. The plaintiffs further contend that they are afforded protection by old c. 40A, § 5A, because they made their division of the locus lots by "checkerboard" conveyances (see note 5, *supra*) on September 15, 1981, just prior to the expiration (on September 18, 1981) of the old c. 40A, § 7A, exemption. Whether protection for these conveyances would be available under old § 5A, even if it continued to have any effect at all on September 15, 1981, depends upon careful examination of the language of old § 5A[7] (as well as of the new c. 40A).

---

[7] Old § 5A, as most recently amended (by St. 1961, c. 435, § 1) prior to the enactment of St. 1975, c. 808, § 3, in relevant part, read: "Any lot lawfully laid out by plan or deed duly recorded, as defined in section eighty-one L of chapter forty-one . . . [x] *which complies at the time of such recording or such endorsement, whichever is earlier,* with the *minimum area . . . requirements,* if any, of any zoning . . . by-law in effect in the . . . town where the land is situated, notwithstanding the adoption or amendment of provisions of a zoning . . . by-law in such . . . town imposing minimum area . . . requirements . . . in excess of those in effect at the time of such recording or endorsement (1) *may thereafter be built upon for*

4. The town contends that old § 5A, by its express terms, cannot have any effect in the present case because the lots portrayed on the definitive plan have not been shown to have complied with the lot size requirements of the then existing town zoning by-law on September 18, 1974 (the date of approval and endorsement of that plan by the planning board).[8] The locus had been placed by the town zoning by-law adopted on March 5, 1973, in an AGB zone, thus increasing to 20,000 square feet the minimum lot required in the neighborhood of the locus.[9] The language following the bracketed letter [x] in old § 5A, as quoted in note 7, *supra,* thus was not satisfied. Old § 5A has no application to the present case. Consequently, the plaintiffs cannot rely on the words in old § 5A following the bracketed letter [y], see note 7, *supra.*[10]

5. The provisions of old c. 40A, § 5A and old § 7A, so far as clearly continued at all (in respects here relevant) in new c. 40A, are found in new c. 40A, § 6. The first sentence of the fourth paragraph of new § 6, reads in part, "Any increase

---

*residential use if, at the time of the adoption of such requirements or increased requirements, or [y] while building on such lot was otherwise permitted, whichever occurs later,* such lot *was held in ownership separate from that of adjoining land located in the same residential district . . ."* (emphasis supplied). The bracketed letters [x] and [y] are inserted to facilitate reference to the language immediately following those letters respectively.

[8] The by-law adopted March 5, 1973, became effective on April 25, 1973, when approved by the Attorney General. See G. L. c. 40, § 32, prior to its amendment by St. 1975, c. 808, § 1.

[9] It is probably the fact that the lots in the definitive plan for subdivision of the locus approved September 18, 1974, were in excess of 15,000 square feet in area but were not as large as 20,000 square feet. This fact does not seem to be stipulated or pleaded in the record in express terms, but it has not been shown by the stipulated facts that any lot in the approved subdivision exceeded 20,000 square feet.

[10] It probably is not necessary to hold in this case that old c. 40A, §§ 5A, and 7A, have been completely supplanted by new c. 40A. It, however, is obvious that, in view of the legislative history discussed in notes 4 and 5, *supra,* landowners face a heavy burden of persuasion to show that old §§ 5A and 7A have had continuing vitality since the dates set forth in St. 1975, c. 808, §§ 6 and 7, as amended by St. 1977, c. 829, § 4. See and compare the effect of new c. 40A in another context in *Bartlett* v. *Board of Appeal of Lakeville,* 23 Mass. App. Ct. 664, 667-670 (1987).

in area . . . of a zoning . . . by-law shall not apply to a lot for single and two-family residential use *which at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land,* conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage . . ." (emphasis supplied). Despite the italicized language in this quotation, this sentence was interpreted in *Adamowicz* v. *Ipswich,* 395 Mass. 757, 762-763 (1985), *S.C.,* 772 F.2d 5 (1st Cir. 1985), as providing that the new § 6 looks to the most recent instrument of conveyance prior to the zoning change to establish the meaning of that language. As to the increases in minimum lot size affecting the locus, both occurred prior to the "checkerboarding" conveyances effected by W & J on September 15, 1981. As of the date of each of these lot size increases, all the lots shown on the subdivision plan were still owned by W & J. This, of course was also the case on January 1, 1976, and on June 30, 1978. See St. 1975, c. 808, § 7, as amended by St. 1977, c. 829, § 4. The new c. 40A, § 6, thus affords each of the plaintiffs no protection from the present zoning by-law lot size requirements.

6. The plaintiffs also gain no protection from § 3421 of the town zoning by-law which afforded protection only "to a lot shown on a plan or described in a deed duly recorded" at the registry as of Janaury 1, 1981, as not "held in common ownership with any adjoining land, not otherwise protected by" new c. 40A, § 6.

*Judgments affirmed.*