DIMITRIOS S. TSAGRONIS & another[1] *vs.* BOARD OF
APPEALS OF WAREHAM & others[2]
(and two companion cases[3]).

Nos. 90-P-821, 90-P-822 & 91-P-760.

Plymouth. March 13, 1992. - July 24, 1992.

Present: BROWN, KASS, & IRELAND, JJ.

Further appellate review granted, 413 Mass. 1104 (1992).

*Zoning,* Person aggrieved, Amendment of by-law or ordinance, Exemption,
Variance.

Land owners who sought to challenge the construction of a residence on an
abutting nonconforming lot were entitled to status as aggrieved persons
under G. L. c. 40A, § 17, even though their use of their own land was
similarly nonconforming. [58-59]

Provisions of G. L. c. 40A, § 6, 4th par. (and § 5A of the former c. 40A,
as in effect prior to a town's acceptance of St. 1975, c. 808, § 3), which
protect an approved lot from being rendered unbuildable by restrictive
zoning changes, did not apply to a subdivision lot which was not in
conformity with zoning requirements existing in 1972 when it came into
separate ownership but, instead, was buildable at that time only for a
finite period by virtue of the zoning "freeze" provisions of the former
G. L. c. 40A, § 7A, as then in effect. [59-62]

A municipal board of appeals acted in accordance with its authority in
granting a variance from area and frontage requirements in order to
permit construction of a single family residence on the sole remaining
unbuilt-upon lot in a subdivision located on an otherwise fully-devel-
oped peninsula, where, in the circumstances, the board could properly
conclude that the lot had become an aberration as to shape and dimen-
sion so as to warrant relief consistent with the planned area in which it
is located. [62-63]

[1]Rita M. Tsagronis.

[2]Ronald M. Forrester and Kathryn S. Forrester.

[3]Dimitrios S. Tsagronis and Rita M. Tsagronis *vs.* Board of Appeals of
Wareham and Ronald Forrester. Dimitrios S. Tsagronis and Rita M.
Tsagronis *vs.* Board of Appeals of Wareham, the building inspector of
Wareham, and Ronald Forrester.

CIVIL ACTIONS commenced in the Superior Court Department on December 20, 1984, and March 5, 1987, respectively.

The cases were consolidated for trial and were heard by *Robert L. Steadman*, J.

CIVIL ACTION commenced in the Superior Court Department on December 15, 1989.

The case was heard by *Suzanne V. DelVecchio*, J., on motions for summary judgment.

*Edward T. Troy* for Ronald M. Forrester & another.

*George C. Decas* (Daniel F. Murray with him) for the plaintiffs.

KASS, J. When laid out in 1971 as part of a proposed subdivision, lot 40 (the "locus") conformed to the dimensional requirements of the zoning by-law of Wareham. Nine days after the preliminary plan for the proposed subdivision (it disclosed seven lots on a point projecting into Buzzards Bay) was filed with the Wareham planning board, the inhabitants of the town, on June 21, 1971, adopted an amendment to their zoning by-law requiring larger area and more frontage for residential lots in the zoning district (Residence C-3) in which the peninsula was classified. Each of the seven lots was conveyed to owners unrelated to one another and unrelated to the original owner of the entire site by August 2, 1973, and houses have been built on six of the seven lots. There is appended to this opinion a plan, incorporating the salient features of a plan filed with the Plymouth County Registry District of the Land Court on February 28, 1972, which shows the locus and the other lots in the subdivision.

Since 1984, the parties — the Tsagronises, who own lot 41, which abuts the locus (lot 40); successive owners of the locus; and the board of appeals — have fought their way through successive administrative and judicial proceedings. In those proceedings, the town and the owners of the locus have exerted themselves persistently to achieve the eligibility of the locus for a permit to build a single family residence, while the Tsagronises, equally persistently, have insisted that nothing at all may be built on the locus. Three cases result-

ing in three dispositive orders by three different judges have now worked their way to this court and were consolidated for purposes of argument.

The first case was a statutory appeal, i.e., under G. L. c. 40A, § 17, by the Tsagronises from a variance granted on December 3, 1984.[4] As the board's variance decision was innocent of any trace of supporting findings, the Superior Court judge before whom the matter came lost no time in entering an order that the variance exceeded the board's authority. See *Josephs* v. *Board of Appeals of Brookline*, 362 Mass. 290, 292 (1972); *Alpert* v. *Board of Appeal of Chelsea*, 6 Mass. App. Ct. 888, 889 (1978). The judge's order included a remand to the board for further proceedings, which might include making requisite findings or producing some other basis for issuing a building permit, such as grandfather rights. That aspect of the proceedings requires no further comment, and the board and the Forresters (who ultimately came to own the locus) do not contend that it does; the variance was manifestly flawed.

After the controversy returned to the board, the building inspector issued a permit to the Forresters on the basis of a grandfathered small lot exemption derived from G. L. c. 40A, § 6. The Tsagronises appealed from that permit grant to the board of appeals, which affirmed the action of the building inspector. From that decision of the board the Tsagronises appealed.[5] A second judge of the Superior Court concluded that the locus was no longer exempt from application of the revised zoning law, that exemption having expired December 13, 1978. The judge, thus, annulled the decision of the board and ordered revocation of the permit. In so doing, the judge suggested the owners of the locus might have another go at a variance.

---

[4]That date, in any event, was the date of the notice given by the board of appeal to the town clerk that a variance had been granted, following a hearing on November 28, 1984.

[5]That case (Plymouth docket no. CA 87-372) was consolidated with the prior case (no. CA 84-20413), over which the court had retained jurisdiction.

Round three did produce a new variance, dated December 8, 1989. Again the Tsagronises appealed. A third Superior Court judge found that the locus met the statutory criteria for a variance and ruled that the board had acted within its authority. A judgment was entered accordingly. We affirm the judgments.

1. *Aggrieved party status of the plaintiffs.* As examination of the plan appended to this opinion will disclose, lot 41, which the Tsagronises own, has no greater frontage than any of the other six lots in the subdivision and, like those other lots, is below the one-acre requirement which became effective after the subdivision plan was first submitted. Indeed, the Tsagronis lot has substantially less road frontage or beach frontage than does the locus.[6] How then, the defendants ask, can the Tsagronises, who use their land as the owners of the locus wish to use theirs, be aggrieved persons entitled to maintain an appeal within the meaning of G. L. c. 40A, § 17? Cf. *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston,* 324 Mass. 427, 430-432 (1949); *Redstone* v. *Board of Appeals of Chelmsford,* 11 Mass. App. Ct. 383, 385 (1981).

Unlike the properties of the plaintiffs in the *Circle Lounge* and *Redstone* cases, however, the Tsagronis property lies within the restricted zone. As owners of a lot abutting the locus, the Tsagronises were entitled to notice of the board of appeals' action and, therefore, enjoy a presumption of aggrieved person status. *Waltham Motor Inn, Inc.* v. *LaCava,* 3 Mass. App. Ct. 210, 215-217 (1975). That presumption recedes in the face of the defendants' contesting of the plaintiffs' aggrieved status, and the plaintiffs must take on the burden of adducing evidence which demonstrates that they would suffer some tangible injury to their property should the zoning relief granted be allowed to stand. *Ibid.* Dimitrios Tsagronis testified to the self-evident fact that his southeasterly view of Buzzards Bay would be partially obstructed by

[6]The locus has 168 feet of frontage on the road, compared to 100 feet for the Tsagronis lot. The locus contains 22,600 square feet, compared to 25,900 square feet in the Tsagronis lot.

construction on the locus. In consequence, he said, the value of his property would be diminished. There was no evidence produced by the defendants to contradict the Tsagronises' statement of grievance, and the trial judges who, respectively, considered the question had sufficient basis for finding that the Tsagronises were persons aggrieved.[7] A trial judge's findings of aggrieved person status are entitled to deference. *Paulding* v. *Bruins*, 18 Mass. App. Ct. 707, 709 (1984). The plaintiffs may assert a legal interest in preventing further construction in a district in which the existing development is already more dense than the applicable zoning regulation allows, see *DiCicco* v. *Berwick*, 27 Mass. App. Ct. 312, 315 (1989); it does not matter that the plaintiffs' own use is similarly nonconforming, *Reynolds* v. *Board of Appeal of Springfield*, 335 Mass. 464, 470 (1957); *Vainas* v. *Board of Appeals of Lynn*, 337 Mass. 591, 594 (1958).

2. *Grandfather rights.* When the subdivision plan was endorsed as approved by the planning board on December 13, 1971, the lots depicted on it acquired the benefits of G. L. c. 40A, § 7A, as amended by St. 1965, c. 366, § 1, and, so the defendants argue, the benefits of G. L. c. 40A, § 5A, as amended through St. 1961, c. 435, § 1. Both sections appeared in "old" c. 40A and were superseded by provisions of the "new" Zoning Act, St. 1978, c. 808, § 3, which Wareham adopted on April 18, 1978.

Section 7A of "old" c. 40A provided that if a lot shown on a preliminary subdivision plan, when first submitted, conformed with then existing municipal zoning law, it could be built upon for seven years from the date of endorsement of the plan, even though subsequent amendment to the local zoning law rendered the lot undersized.[8] That grace period

---

[7]We place no reliance on a stipulation in the grandfather rights case that the court had jurisdiction to determine the validity of the issuance of the building permit. Jurisdiction cannot be conferred by agreement of the parties. *Flynn* v. *Contributory Retirement Appeal Bd.*, 17 Mass. App. Ct. 668, 670 (1984).

[8]So far as material, § 7A provided that the zoning by-law "in effect at the time of the submission of the first submitted plan shall govern the land shown on such approved definitive plan, for a period of seven years from

expired on December 13, 1978.[9] As we understand the current owners of the locus, the Forresters, they attempt first to patch together the machinery of § 5A and § 7A of "old" c. 40A. Prescinding from the question whether any of the "old" c. 40A provisions applied after the town subjected itself to the "new" c. 40A, we think the argument unpersuasive. Section 5A of "old" c. 40A provided that "[a]ny lot lawfully laid out by plan or deed duly recorded . . . which complies at the time of such recording . . . with the minimum area, frontage, width, and depth requirements, if any, of [the] zoning . . . by-law in effect in the . . . town" notwithstanding a later adoption of more restrictive dimensional requirements "may thereafter be built upon for residential use if, at the time of the adoption of such requirements or increased requirements, or while building on such lot was otherwise permitted, whichever occurs later, such lot was held in ownership separate from that of adjoining land located in the same residential district . . . ."

The Forresters seem to reason that since, under § 7A, a single-family house could have been built on the locus when, on December 7, 1972, it came into ownership separate from that of adjoining owners, the lot, i.e., the locus, conformed with local zoning regulations when it was recorded; ergo, it was entitled to permanent grandfather rights. Put another way, the Forresters say that on December 7, 1972, they complied with the dimensional requirements of Wareham's zoning by-law because the lot then still enjoyed a dispensation from those dimensional requirements. The reasoning is circular in that, as in *Mendes* v. *Board of Appeals of Barnstable*, 28 Mass. App. Ct. 527, 528-531 (1990), the landowner is attempting to parlay one dispensation into entitlement to another. If we read the statute, as we should, to give

the date of endorsement of such approval . . . ." An analogous provision which appears in "new" G. L. c. 40A, § 6, fifth par., provides for an eight-year "freeze" period.

[9]For purposes of considering whether certain "zoning freeze" benefits apply under "new" G. L. c. 40A, § 6, the parties stipulated that the freeze period ended December 15, 1978. Nothing turns on the two-day difference.

its words their ordinary and plain meaning (see, e.g., *Martin v. Rent Control Bd. of Cambridge*, 19 Mass. App. Ct. 745, 747 [1985]), then the grandfather rights conferred by § 5A apply only if the lot when separately recorded conforms with the zoning regulations then applicable, not with those zoning regulations as suspended or modified by other action.

When the building inspector of Wareham granted a building permit for the locus in July, 1986, and the board of appeal on February 27, 1987, upheld his action, they purported to act under § 6 of "new" c. 40A. Under G. L. c. 40A, § 6, as appearing in St. 1975, c. 808, § 3, and as amended through St. 1985, c. 494, the "freeze" exemptions and dispensations which appeared in various sections in "old" c. 40A were reorganized in a single section. See *Wright* v. *Board of Appeals of Falmouth*, 24 Mass. App. Ct. 409, 414 (1987). Thus, the subject matter of § 5A of "old" c. 40A turns up in the fourth paragraph of "new" § 6 and the subdivision freeze of "old" § 7A appears in the fifth paragraph of "new" § 6. If anything, the new language makes the correct conclusion more apparent. The fourth paragraph of new § 6 provides in pertinent part that an increase in dimensional requirements "shall not apply to a lot for single and two-family residential use which at the time of recording . . . was not held in common ownership with any adjoining land, *conformed to then existing requirements* and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage" (emphasis supplied). At the time of recording of lot 40 as a lot separate from common ownership, the "then existing requirements" were the more demanding dimensional requirements, not those requirements as temporarily suspended. As the court remarked in *Adamowicz* v. *Ipswich*, 395 Mass. 757, 763 (1985), the "status of ownership of a lot," i.e., whether in common ownership, "is determined as of the date of the zoning change." See also *Wright* v. *Board of Appeals of Falmouth*, 24 Mass. App. Ct. at 414-415. Although "[s]ection 6 is concerned with protecting a once valid lot from being rendered unbuildable for residential purposes . . .," *Sturges* v. *Chilmark*,

380 Mass. 246, 261 (1980), the locus was never valid as a buildable lot except on a finite basis, the seven years of grace granted under "old" G. L. c. 40A, § 7A.

3. *The variance.* In the variance case, the pivotal question was whether the locus was afflicted with "circumstances relating to the soil conditions, shape, or topography" which differentiated it from other land in the zoning district in which it was located. See G. L. c. 40A, § 10, as appearing in St. 1975, c. 808, § 3. The board in its findings focused on the isolation of lot 40 in the otherwise fully developed peninsula. The judge fleshed this out. See *Sherman* v. *Board of Appeals of Worcester*, 354 Mass. 133, 134 (1968). She found that the board, which had the subdivision plan before it, would surely have observed that of all the lots in the subdivision, lot 40, the locus, was subjected to the greatest sacrifice and distortion of shape by the cul-de-sac at the end of Sias Point Extension.

The balance of the variance criteria of § 10 fell easily into place and both the board and judge touched on them. Absent relief, the lot could not be used for a residence, the purpose for which it had been laid out with the approval of the planning board and for which the balance of the lots in the subdivision were being used. Literal enforcement, therefore, produced a hardship, and as Sias Point had come to be developed so that all the other lots were used in the fashion the Forresters desired to use theirs, desirable relief could be granted without detriment to the public good or derogating from the intent and purpose of the zoning by-law. The entire peninsula had lawfully become a special case within the zoning district.

It is a difficulty, however, that the segment which the cul-de-sac removed from the locus, causing it to be oddly shaped, had less to do with lot 40's disqualification under the Wareham zoning by-law than did that lot's deficiencies in area and frontage. Ordinarily, failure to meet dimensional requirements does not satisfy the odd shape criterion of the statute. See *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 11 (1981); *Guiragossian* v. *Board of Appeals*

*of Watertown,* 21 Mass. App. Ct. 111, 116 (1985); *DiCicco* v. *Berwick,* 27 Mass. App. Ct. at 314; *Karet* v. *Zoning Bd. of Appeals of Worcester,* 27 Mass. App. Ct. 439, 440 (1989); *Mitchell* v. *Board of Appeals of Revere,* 27 Mass. App. Ct. 1119, 1120 (1989); *Feldman* v. *Board of Appeal of Boston,* 29 Mass. App. Ct. 296, 297 (1990).

The judge appears to have observed, however, that the alignment of the road and cul-de-sac in the approved subdivision plan impinged particularly on lot 40 and in such fashion as taxed its area and possibly its street frontage. What confronted the board and the judge was the consequence of the planning board's view, back in 1971, of how lots on Sias Point might best be laid out. We are of opinion that the planning decisions of the town, as manifested in the approval of the subdivision plan, and the execution of that plan as to all but one remaining lot are factors which the board of appeals could take into account in arriving at a finding that the locus had become burdened with an oddity of shape. Our view recognizes the finite time allowed under G. L. c. 40A, § 6, to "build out" a subdivision, but respects as well the local prerogative of a board of appeals under G. L. c. 40A, § 10, to find that in particular circumstances a residual unbuilt lot in a subdivision has become an aberration as to shape and dimension such as to warrant relief consistent with the planned area in which it is located. Cf. *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555, 557-558 (1954); *Kairis* v. *Board of Appeal of Cambridge,* 337 Mass. 528, 530-531 (1958).

The judgments in Plymouth docket no. CA87-372 and no. CA84-20413 (which were consolidated below) annulling the action of the board of appeals in approving the issuance of a permit on the basis of rights conferred by G. L. c. 40A, § 6, are affirmed. The judgment in Plymouth docket no. CA89-2563B, that the board of appeals acted in accordance with its authority in granting a variance to the owner of lot 40, is affirmed.

*So ordered.*

## APPENDIX.