DIMITRIOS S. TSAGRONIS & another[1] *vs.* BOARD OF
APPEALS OF WAREHAM & others.[2]

Plymouth. December 7, 1992. - May 24, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Zoning*, Person aggrieved, Variance.

In a zoning case the judge correctly concluded that the plaintiffs had standing as aggrieved parties to challenge the grant of a variance authorizing construction of a house on a nonconforming lot abutting the plaintiffs' lot. [331-333] ABRAMS, J., dissenting, with whom LIACOS, C.J., & LYNCH, J., joined.

A Superior Court judge erred in upholding a variance granted by a municipal board of appeals authorizing construction of a house on a nonconforming lot, where the owner had not demonstrated any substantial hardship caused by "circumstances relating to the soil conditions, shape, or topography" of the land. [333]

CIVIL ACTION action commenced in the Superior Court Department on December 15, 1989.

The case was heard by *Suzanne V. DelVecchio*, J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*George C. Decas* (*Daniel F. Murray* with him) for the plaintiffs.

*Edward T. Troy* for the defendants.

WILKINS, J. More than twenty years ago, a seven lot subdivision was approved in Wareham, and private houses have been constructed on six of the seven lots. Shortly after the preliminary plan for the subdivision was filed, Wareham in-

---

[1]Rita M. Tsagronis.

[2]Ronald M. Forrester and Kathryn S. Forrester.

creased the required area and frontage for lots in the zoning district in which the subdivision was located and the lots became nonconforming lots. Since 1984, in circumstances the details of which largely need not concern us, the plaintiffs, owners of a lot that abuts the lot on which no house has been constructed (the locus), have contested with the owners of the locus and with the Wareham board of appeals various issues concerning the right of the owners of the locus to construct a house on it. Our principal concern in this case is with the lawfulness of the grant of a variance by the board of appeals allowing the construction of a house on the locus.

The Appeals Court recently considered appeals from three judgments in three separate actions concerning the locus, including one upholding the grant of the variance. *Tsagronis* v. *Board of Appeals of Wareham*, 33 Mass. App. Ct. 55 (1992). We granted the plaintiff abutters' application for further appellate review with respect to the one judgment that was unfavorable to them. We agree with the Appeals Court's conclusion, affirming the judgments in the two other cases, to the effect that the owners of the locus had no right under G. L. c. 40A, § 6 (1990 ed.), to construct a house on the locus.[3] We also agree with the Appeals Court's reasoning that, in the case that is before us on further review, the plaintiff abutters have standing as aggrieved parties to challenge the granting by the defendant board of appeals of a variance authorizing the construction of a house on the locus.[4] We disagree, however, with the Appeals Court's conclu-

---

[3]The owners of the locus did not seek further appellate review in those two cases.

[4]The Appeals Court correctly recites the uncontroverted testimony of Dimitrios Tsagronis that his view of Buzzards Bay would be partially obstructed by construction on the locus and that the value of his property would be diminished. *Id.* at 58-59. The trial judge was warranted in finding that the plaintiffs were aggrieved parties. Indeed, on the uncontested facts, the status of aggrieved party probably is compelled as a matter of law.

This is not a case in which the status of the plaintiffs as aggrieved parties is founded on a presumption. See *Marotta* v. *Board of Appeals of Revere*, 336 Mass. 199, 204 (1957). The dissent's claim that such a pre-

sion that the Superior Court judge correctly upheld the grant of the variance.

We are concerned here with a nonconforming lot in a subdivision as to which any exemption under G. L. c. 40A, § 6, long ago expired. The lot is shown as lot 40 on a plan duplicated at the end of the Appeals Court opinion. *Tsagronis* v. *Board of Appeals of Wareham, supra* at 64. Its frontage is curved in reflection of the fact that it fronts on the cul-de-sac at the end of the subdivision road. The sole question we need decide is whether the Superior Court judge was correct in upholding the variance granted by the board of appeals.

A variance may be granted if, among other things, the board of appeals finds as "to particular land . . . that owing to circumstances relating to the soil conditions, shape, or topography of such land . . . but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the . . . by-law would involve substantial hardship" to the landowner. G. L. c. 40A, § 10 (1990 ed.). We focus on the words "circumstances relating to the soil conditions, shape, or topography of such land" which must be the reason for any substantial hardship to the owner. Unless circumstances relating to the soil conditions of the land, the shape of the land, or topography of the land cause the hardship, no variance may be granted lawfully.

The board of appeals decision is wholly silent on any such special circumstances relating to the locus that might warrant the granting of a variance. The Superior Court judge rightly recognized the statutory requirement that there must be some special feature concerning the lot to justify a variance. Apparently there was no evidence bearing on the soil conditions of the land or the topography of the land, because she did not discuss the subject. The judge relied on "the unique shape" of the lot as subdivided. This consideration standing alone is, of course, irrelevant. The fact that the locus has a special shape because of the cul-de-sac cannot sup-

sumption was rebutted (presumably by evidence), and hence it disappeared, is beside the point.

port the granting of a variance from area and frontage requirements. The hardship here has nothing to do with the shape of the land (which the parties and the courts below have equated with the shape of the lot as subdivided). The hardship is solely due to the failure of the owner of the locus to construct a house on the undersized locus before statutory protections against the zoning changes ran out.[5] That kind of hardship does not justify the granting of a variance.

Indeed, when the Appeals Court discussed the statutory requirement, it correctly observed that the locus's deficiency in area and frontage was the problem, far more than its odd shape. *Tsagronis* v. *Board of Appeals of Wareham, supra* at 62. It then also correctly observed that "[o]rdinarily, failure to meet dimensional requirements does not satisfy the odd shape criterion of the statute," citing six opinions, five of which are opinions of the Appeals Court. *Id.* at 62-63. In *Shafer* v. *Zoning Bd. of Appeals of Scituate,* 24 Mass. App. Ct. 966, 967 (1987), not cited in its opinion in this case, the Appeals Court appropriately observed that "[t]he 'shape' of a lot is not to be confused with its 'size.' "[6]

Without citation of authority and disregarding the requirement that the shape of the land must be the cause of any hardship warranting a variance in this case, the Appeals Court stated that the board of appeals could have found that "the locus had become burdened with an oddity of shape" because the planning board had approved the subdivision

---

[5] If the shape of any nonconforming lot would warrant a variance from area and frontage requirements, the door would be wide open for the construction of a house on each such lot in the Commonwealth. See *Warren* v. *Zoning Bd. of Appeals of Amherst,* 383 Mass. 1, 11 (1981), holding that inadequate frontage of a lot does not satisfy the statutory standard for the granting of a variance.

[6] Other cases not cited by the Appeals Court that support the view that the size, area, width, or frontage of a lot standing alone do not qualify as "shape of the land" grounds for the grant of a variance from width, area, and frontage requirements of a zoning by-law include *Warren* v. *Zoning Bd. of Appeals of Amherst, supra* (frontage); *Feldman* v. *Board of Appeal of Boston,* 29 Mass. App. Ct. 296, 297 (1990) (frontage and width); *Mitchell* v. *Board of Appeals of Revere,* 27 Mass. App. Ct. 1119, 1120 (1989) (area).

plan and all but one lot in the subdivision had a house on it. *Tsagronis* v. *Board of Appeals of Wareham, supra* at 63. The Appeals Court concluded its analysis by asserting that in its view its conclusion respected "the local prerogative of a board of appeals under G. L. c. 40A, § 10, to find that in particular circumstances a residual unbuilt lot in a subdivision has become an aberration as to shape and dimension such as to warrant relief consistent with the planned area in which it is located." *Id.* The Appeals Court's conclusion ignores both the statutory requirement that hardship be due to the shape of the land and the precedent which it cited. That conclusion, moreover, is not supported by the two opinions cited in support of it.[7]

The defendant owners argue that the application of the town's zoning by-law so as to bar construction of a house on their lot is an unconstitutional taking. They did not raise the issue in their answer filed in the Tsagronises' appeal from the grant of the variance. The issue could not properly be raised in the Tsagronises' appeal, to which the town is not a party.

The judgment upholding the board of appeals' decision granting the variance is reversed, and judgment shall be entered in the Superior Court vacating the decision of the board of appeals granting the variance.

*So ordered.*

ABRAMS, J. (dissenting, with whom Liacos, C.J., and Lynch, J., join). I dissent. In my view the record does not support the conclusion that the Tsagronises are aggrieved parties. I would dismiss the Tsagronises' appeal.

---

[7] One opinion recognizes the special familiarity of a local zoning appeals board to which judges should defer when the local board has *denied* a variance. *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 557-558 (1954). The other case arose under a variance statute that did not impose the condition (as G. L. c. 40A, § 10, now does) that the hardship to the owner be due to circumstances relating to the soil condition, shape, or topography of the land. *Kairis* v. *Board of Appeal of Cambridge*, 337 Mass. 528, 531 (1958).

To have standing to seek judicial review of the board's decision, a party must qualify as a person aggrieved under G. L. c. 40A, § 17 (1990 ed.). See *Green v. Board of Appeals of Provincetown*, 404 Mass. 571, 572 (1989). Standing as an aggrieved party is jurisdictional, *Marotta v. Board of Appeals of Revere*, 336 Mass. 199, 203 (1957) (whether jurisdiction was raised before Superior Court is immaterial), and cannot be conferred by stipulation or waiver of the parties. *First Christian Church v. Brownell*, 332 Mass. 143, 148 (1955) ("[m]atters affecting the court's jurisdiction are open for consideration without motion").

The Tsagronises, as owners of property directly abutting the locus, are deemed to be "parties in interest" entitled to notice by mail of the hearing before the board on the Forresters' application for a variance for the locus. G. L. c. 40A, § 11 (1990 ed.). In *Marotta v. Board of Appeals of Revere, supra,* the court stated that parties in interest are *rebuttably* presumed to be persons aggrieved, and as such have standing to contest the granting of a variance. See, e.g., *Paulding v. Bruins*, 18 Mass. App. Ct. 707 (1984) (abutting landowners, entitled to receive notice of public hearing under G. L. c. 40A, § 11, rebuttably presumed to be persons aggrieved). The court cautioned that if, as here, the status of plaintiffs as parties aggrieved is contested, "the point of jurisdiction will be determined on all the evidence with no benefit to the plaintiffs from the presumption as such." *Marotta, supra* at 204, citing *Krantz v. John Hancock Mut. Life Ins. Co.*, 335 Mass. 703 (1957). In emphasizing that the presumption of abutters' aggrieved status is rebuttable, the court anticipated that there would be circumstances in which even direct abutters would not have standing as parties aggrieved. In my view this case presents such a situation.

The Tsagronises contend — and the court concludes — that their property would decline in value if the variance were allowed. Yet the only evidence offered by the Tsagronises as to value was the deposition of Dimitrios Tsagronis. Tsagronis conceded that they purchased their unimproved lot for $90,000, and that after construction on the

lot in the subdivision to the north of the Tsagronises' lot, the Tsagronises' lot and house were valued at $390,000. There was no evidence as to the value of the Tsagronises' lot at the time of the hearing or what the value might be after construction of the Forresters' house, or whether the value would diminish even more if the locus were used for purposes not requiring a variance.[1]

The Superior Court judge determined that the only basis on which the Tsagronises were aggrieved parties under G. L. c. 40A, § 17 (1990 ed.), was an allegation of diminution of light and air.[2] That was error. Such an allegation is not only speculative but is also an inappropriate basis to qualify a party for aggrieved status. *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 46 (1977) ("in many, if not most, circumstances, the injury complained of may be too remote to make the party seeking review a 'person aggrieved' "). The court stated in *Nigro* v. *Jones*, 332 Mass. 741, 744 (1955), that access to light and air is not a matter of right. The general rule is that in order to constitute a deprivation of light "there must be a substantial deprivation of light, enough to render the occupation of the house uncomfortable according to the ordinary notions of mankind." *Tomburo* v. *Liberty Freehold Theatre Corp.*, 131 N.J. Eq. 513, 515 (1942). See G. L. c. 187, § 1 (1990 ed.). A mere allegation of diminution of light and air is not a substantial injury sufficient to make a party aggrieved. The Tsagronises'

---

[1] The disallowance of the variance would not prevent the Forresters from using the locus as, for example, a campground for Boy Scouts, Girl Scouts, poor children, the Salvation Army, or for many other activities. The Wareham zoning by-law provides that, in a Residential R-43 District, "buildings, structures and premises may be used for one-family detached residential purposes, [and] *any lawful religious, educational or non-profit recreational purpose*" (emphasis supplied).

[2] The judge stated that "allegations of diminution of light and air provide sufficient support to raise a challenge based upon a claim of real and substantial injury."

other bases for asserting aggrieved party status are even less meritorious.[3]

Because on this record the presumption of aggrieved party status was rebutted, I would dismiss the appeal.[4] I therefore respectfully dissent.

---

[3]The Tsagronises alleged that allowance of the variance would increase air pollution due to operation of the Forresters' automobiles. The Forresters are entitled to use as many automobiles to get to and from their lot as they and their guests may need, regardless of the variance. The Forresters noted that Tsagronis had admitted that the location was windy, that Tsagronis does not know how many cars already use the cul-de-sac, and that he has never been concerned about any air pollution already existing in and near his lot. See also 310 Code Mass. Regs. § 7.00. The Tsagronises alleged that allowance of a variance would increase erosion of their lot. The Tsagronises admitted that their lot was not currently experiencing erosion even though a septic system, a foundation and a first floor had been constructed on the locus a number of years ago. The Tsagronises also alleged harm based on the location of the Forresters' septic system. The Forresters point to Tsagronis's acknowledgment that he does not know of any flaws in design or construction; Tsagronis also stated that an engineer with whom he consulted affirmed that the specifications of the Forresters' septic system conformed to legal requirements. In sum, the record indicates that the Tsagronises are not aggrieved parties.

[4]As I read note 4 of the court's opinion, the court has replaced the rebuttable presumption found in G. L. c. 40A, § 17 (1990 ed.), with an automatic standing rule.