HOWARD T. ROURKE & others[1] *vs*. STUART ROTHMAN.

No. 04-P-1050.

Suffolk. April 12, 2005. - September 26, 2005.

Present: LAURENCE, DUFFLY, & KAFKER, JJ.

Futher appellate review granted, 445 Mass. 1108 (2005).

*Zoning,* By-law, Exemption, Lot size. *Words,* "Then existing requirements."

In an appeal from a decision of a town's zoning board of appeals, a Land Court judge properly concluded that a lot that was once buildable due to a local by-law exemption from minimum lot size requirements did not remain buildable, after the repeal of that local exemption, by virtue of the operation of the grandfather provision of the Zoning Act, G. L. c. 40A, § 6, fourth par., which protected only the right to build on lots that conformed to existing dimensional requirements, rather than lots that were buildable only due to a grandfather exemption to those dimensional requirements. [602-605]

CIVIL ACTION commenced in the Land Court Department on August 20, 2002.

The case was heard by *Alexander H. Sands*, J., on motions for summary judgment.

*Duane P. Landreth* for the defendant.

*Brian S. Kaplan* for the plaintiffs.

KAFKER, J. In this case, we address the interplay of grandfather clauses in local zoning by-laws and the grandfather provision of the Zoning Act, G. L. c. 40A, § 6, fourth par., as appearing in St. 1975, c. 808, § 3, and as amended by St. 1979, c. 106.[2] More precisely, we determine whether, because of c. 40A, § 6,

_____

[1]Dorothy A. Rourke, Janet Smith, Kent Turner, Barbara Turner, Samuel J. Kearing, Jr., Edith Dunham, Sue Miller, Gary Bissonette, Victor J. Leon, Gloria Leon, and Mary O. Longsworth.

[2]Black's Law Dictionary 718 (8th ed. 2004) defines a grandfather clause as "[a] provision that creates an exemption from the law's effect for something that existed before the law's effective date; specif., a statutory or regulatory clause that exempts a class of persons or transactions because of circumstances existing before the new rule or regulation takes effect."

a lot that was once buildable due to a local by-law exemption from minimum lot size requirements remains buildable, even after the repeal of that local grandfather exemption. We conclude that c. 40A, § 6, protects the right to build on lots that conformed to existing dimensional requirements rather than lots that were only buildable due to a grandfather exemption to those dimensional requirements. In sum, c. 40A, § 6, does not grandfather local by-law grandfather provisions.

This appeal arises from a decision of the zoning board of appeals (board) of Orleans (town) that the property located at 13 Priscilla Road (locus) and owned by Stuart Rothman[3] constitutes a buildable lot. The plaintiffs, abutters and abutters to abutters to the locus,[4] appealed from the board's decision and the Land Court reversed. We affirm the decision of the Land Court.

To address the merits of the case, it is first necessary to examine the history of the locus, the applicable zoning by-laws, and the current language of G. L. c. 40A, § 6. The locus, originally shown as lot 12 on a 1915 plan of land, contains approximately 8,000 square feet and has approximately eighty feet of frontage. The locus was held in common ownership with one or more adjoining lots from 1949 to 1970. On March 25, 1970, Alein Morrill conveyed the locus to Llewellyn S. Owen, and the locus came into ownership separate from all adjoining lots for the first time.[5] The locus was conveyed to Rothman on November 2, 2001, for approximately $300,000. Despite intervening transfers, the locus was not held in common ownership with any adjacent lot between the 1970 conveyance to Owen and Rothman's purchase in 2001.

The town first adopted a zoning by-law in 1954. At that time, § 5.1 of the by-law, governing lot size, required a minimum of 15,000 square feet in area and a minimum frontage of 100 feet

---

[3]Rothman took title to the property as managing partner of R.S. Family Limited Partnership, trustee of The 13th Priscilla Road Realty Trust.

[4]The defendant has not challenged the plaintiffs' standing.

[5]On appeal, the abutters contend that this was essentially a checkerboard conveyance between spouses for nominal consideration. See *Baldiga* v. *Board of Appeals of Uxbridge*, 395 Mass. 829, 834 n.4 (1985) (" 'Checkerboarding' refers to a practice by which a large landowner divides his property into single lots held by 'straws' "). That claim was not made below and relies on materials not before us. As a result, we do not consider it.

but contained an exemption allowing one building to be erected on any lot that, "at the time this by-law is adopted, either is separately owned or contains five thousand [5,000] square feet." Such exemptions historically have been referred to as "grandfather" provisions. See *Adamowicz* v. *Ipswich*, 395 Mass. 757, 758 (1985). Although not separately owned at the time the zoning by-law was adopted, the locus qualified for the exemption by virtue of its size, 8,000 square feet. In 1961, the by-law was amended, increasing the minimum lot size to 20,000 square feet and 120 feet of frontage but retaining the same exemption. In 1971, after the locus came into separate ownership, the town deleted the by-law's grandfather provision and replaced it with a provision allowing development for "single residential use" provided that the lot or parcel complied "with the specific exemptions of Sections 5A and 7A of Chapter 40A of the General Laws." In 1973, the by-law was further amended, increasing the minimum lot size to 40,000 square feet and minimum frontage to 150 feet but retaining the exemption for lots that complied with the specific exemptions of §§ 5A and 7A of c. 40A of the General Laws. In 1978, the by-law was amended to replace the references to §§ 5A and 7A with a reference to c. 40A, § 6.[6] The current version of the by-law is § 164-22A(1), and it retains an exemption for lots that comply with "the specific exemptions of [G. L. c.] 40A, § 6."

The applicable provisions of G. L. c. 40A, § 6, appear in the first two sentences of the fourth paragraph, which provide as follows:

> "Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use which at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage. Any increase in area, frontage, width, yard or depth

---

[6]Sections 5A and 7A were the sections of G. L. c. 40A addressing nonconforming lots and uses prior to the enactment of the current Zoning Act by St. 1975, c. 808. Section 6 is the cognate section under the current statute.

requirement of a zoning ordinance or by-law shall not apply for a period of five years from its effective date or for five years after January [1, 1976], whichever is later, to a lot for single and two family residential use, provided the plan for such lot was recorded or endorsed and such lot was held in common ownership with any adjoining land and conformed to the existing zoning requirements as of January [1, 1976], and had less area, frontage, width, yard or depth requirements than the newly effective zoning requirements but contained at least seven thousand five hundred square feet of area and seventy-five feet of frontage . . . ."

Prior to Rothman's purchase of the locus, the town's building commissioner issued two letters, one dated October 13, 1999, addressed to counsel for Rothman's predecessor in title and the other dated October 19, 2001, addressed to Rothman, each concluding that the lot was buildable under the grandfather provision of G. L. c. 40A, § 6.[7] On March 18, 2002, however, the building commissioner issued a letter to Rothman reversing his earlier position. On appeal, the board "considered the language of [G. L. c. 40A, § 6,] and construe[d] the term 'then existing requirements' in the first sentence of the fourth paragraph to include all of the provisions of the lot area regulations," including the grandfather provision. It held that § 164-22A(1) exempts the locus from the current by-law's minimum lot size requirement and permits the erection of one single-family dwelling on the lot. A judge of the Land Court, on cross motions for summary judgment, determined that the board had acted beyond its authority, and Rothman appealed.

*Discussion.* We first consider whether the first or second sentence of G. L. c. 40A, § 6, fourth par., applies to the locus. In determining whether a lot conforms to the "not held in common ownership" requirement of the first sentence of c. 40A, § 6, fourth par., we look "to the most recent instrument of record prior to the effective date of the zoning change." *Adamowicz* v.

---

[7]The letters were issued by two different building commissioners. These letters apparently reflected a change in an earlier interpretation; the board's decision that the locus constituted a buildable lot states that town counsel previously had opined, in 1978, that the locus was not buildable, and a prior owner's application for a variance to build on the locus had been denied in 1980.

*Ipswich*, 395 Mass. at 762. Because the locus became separately owned in 1970, before the restrictive zoning change eliminating the grandfather provision, the first sentence of c. 40A, § 6, fourth par., applies to the locus.

We next determine whether the locus "conformed to then existing requirements" as those terms are used in the first sentence of G. L. c. 40A, § 6, fourth par. Looking at the date the locus came into separate ownership, *Tsagronis* v. *Board of Appeals of Wareham*, 33 Mass. App. Ct. 55, 61 (1992), rev'd on other grounds, 415 Mass. 329 (1993), the "then existing" dimensional requirements were those contained in the 1961 by-law, as in effect on March 25, 1970. While requiring a minimum area of 20,000 square feet and 120 feet of frontage, the 1961 by-law contained the grandfather provision exempting lots containing 5,000 square feet at the time of the adoption of the by-law. The issue this court confronts for the first time is whether the locus "conformed" with the "then existing" dimensional requirements by virtue of the grandfather provision contained in the local zoning by-law.

In *Ferzoco* v. *Board of Appeals of Falmouth*, 29 Mass. App. Ct. 986, 986-987 (1990), the issue of the interplay of local grandfather clauses and G. L. c. 40A, § 6, fourth par., was presented, albeit in regard to lots held in common ownership, thereby requiring an interpretation of the second sentence of c. 40A, § 6, fourth par. The plaintiffs there argued that they met the "existing zoning requirements," as that term is used in the second sentence, because in 1976 their lots were grandfathered from the minimum lot size requirements. We held that "neither lot conformed to the zoning requirements," as qualifying for the exception to the minimum lot size requirements "is not the manifest meaning of the expression '[conformed to the] *existing* zoning *requirements*' . . . ." *Id.* at 987. We further concluded that the Legislature did not intend "to pile one grandfather[] [clause] upon another." *Ibid.*

With one caveat, it would appear that the holding in *Ferzoco* v. *Board of Appeals of Falmouth*, *supra*, could be simply extended to apply to the first sentence of G. L. c. 40A, § 6, fourth par., as well. The relevant language requiring conformance is strikingly similar, and there is no reason why the concept

of conformance in the second sentence would have a different meaning with regard to local grandfather clauses than in the first sentence. Furthermore, in neither sentence did the Legislature make reference to local grandfather provisions or other exceptions to minimum lot size requirements. In a dictum in our rescript opinion in *Ferzoco* v. *Board of Appeals of Falmouth, supra,* however, we drew a cryptic distinction, suggesting that it was "especially" clear that grandfathered lots were not conforming in sentence two when the language of sentence two was contrasted with the language in sentence one. Upon further reflection, we discern no such distinction. The differences in terminology are of no substantive import on this issue, but rather merely the product of the sentence structures themselves and the fact that the second sentence addresses the fixed date of January 1, 1976, and the first sentence addresses "then existing" differing dates dependent upon the timing of actions discussed above.

Further support for our consistent treatment of the repeal of local grandfather clauses in G. L. c. 40A, § 6, fourth par., is provided by *Tsagronis* v. *Board of Appeals of Wareham,* 33 Mass. App. Ct. at 61, which involved the interpretation of the first sentence in a related context. There the grandfathering protection on which the owners relied arose from a temporary zoning suspension contained in a prior grandfather provision of the Zoning Act, not from the provisions of a local zoning by-law. In essence, *Tsagronis* presented the question whether the first sentence of c. 40A, § 6, fourth par., grandfathered a prior grandfather clause of the Zoning Act. Adopting a similar analysis in this context, we held that the " 'then existing requirements' were the more demanding dimensional requirements, not those requirements as temporarily suspended." *Tsagronis* v. *Board of Appeals of Wareham,* 33 Mass. App. Ct. at 61. We also rejected the landowner's attempt to "parlay one dispensation into entitlement to another." *Id.* at 60.

In sum, we conclude that conformance with the "then existing requirements" refers to the minimum dimensional requirements contained in a zoning by-law, not to those requirements as exempted by the grandfather provision of the by-law. *Ferzoco* v. *Board of Appeals of Falmouth,* 29 Mass. App. Ct. at

987. See *Tsagronis* v. *Board of Appeals of Wareham, supra* at 61.[8]

Rothman also argues that we should give deference to the board's reasonable interpretation of its own by-law.[9] See *Livoli* v. *Zoning Board of Appeals of Southborough*, 42 Mass. App. Ct. 921, 923 (1997); *Building Commr. of Franklin* v. *Dispatch Communications of New England, Inc.*, 48 Mass. App. Ct. 709, 713 (2000); *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. 349, 356 n.11 (2001). Of course, the town was and is free to adopt a more generous grandfather provision that would allow prior exemptions to be given effect. See *Nichols* v. *Board of Zoning Appeal of Cambridge*, 26 Mass. App. Ct. 631, 632-633 (1988), quoting from *Inspector of Bldgs. of Burlington* v. *Murphy*, 320 Mass. 207, 209 (1946) (G. L. c. 40A, § 6, "prescribes the minimum of tolerance that must be accorded" nonconformities). The town, however, did not draft a by-law provision that expressly grandfathered prior exemptions to its minimum dimensional requirements. Instead, the town simply incorporated by reference the provisions of c. 40A, § 6, and then misinterpreted them.[10] We owe no deference to the board's interpretation of the meaning of c. 40A, § 6. Compare *DeGrace* v. *Conservation Commn. of Harwich*, 31 Mass. App. Ct. 132, 135-136 (1991) (where town simply incorporated by reference statutory language rather than adopting more stringent controls, local authority is bound by definitions contained in the statute and Department of Environmental Quality Engineering order).

The judgment of the Land Court is affirmed.

*So ordered.*

---

[8]Our interpretation is also consistent with the objective underlying G. L. c. 40A, § 6, of "the eventual elimination of nonconformities in most cases." *Preston* v. *Board of Appeals of Hull*, 51 Mass. App. Ct. 236, 242 (2001), quoting from 1972 House Doc. No. 5009, at 39. See *Dowling* v. *Board of Health of Chilmark*, 28 Mass. App. Ct. 547, 551 (1990); *Asack* v. *Board of Appeals of Westwood*, 47 Mass. App. Ct. 733, 736 (1999); *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. 349, 357-358 (2001); *Bruno* v. *Board of Appeals of Wrentham*, 62 Mass. App. Ct. 527, 537 (2004).

[9]We note that the town's position has apparently shifted over time.

[10]We also understand that the dictum in *Ferzoco* v. *Board of Appeals of Falmouth, supra,* and the complexities of G. L. c. 40A, § 6, fourth par., made this interpretation a difficult task.